Case 75.—ACTION BY W. B. GAINES AGAINST THE CITY OF BOWLING GREEN FOR   SERVICE RENDERED AS AN ATTORNEY UNDER A CONTRACT WITH THE CITY ATTORNEY.—Oct. 16.

## City of Bowling Green v. Gaines.

Appeal from Warren Circuit Court.

JOHN M. GALLOWAY, Circuit Judge.

Judgment for Plaintiff.    Defendant appeals.    Reversed.

1.   City Council—Fiscal Affairs—Can Not be Delegated—Contract by City Attorney—Legality—The city council is the governing body of the city and the city attorney is the general law officer of the city, but he has no authority to make any contract on behalf of the city for other counsel, or to create any liability therefor.   The fiscal affairs of the city were committed by the legislature to the city council, and public policy does not permit the discretionary duties which the law has placed upon them for the benefit of the public to be delegated to the city attorney or to any one by ordinance or otherwise.

J. G. COVINGTON attorney for appellant.

Our contention is that an ordinance of the city, which gives the city attorney the power (1) to determine the necessity for employing additional counsel for the city, (2) the power to select such

City of Bowling Green v. Gaines.

counsel, and (3) the power to fix his compensation is void, for the reason that no one of these three things can be delegated, but must be exercised solely and exclusively by the council, and therefore there can be no recovery on a contract so made.

## AUTHORITIES CITED.

Vol. 1 Municipal Corporation cases, annotated 247 (Michie) and exhaustive annotation at end of case; Vol. 1 Dillon on Municipal Corporation 3d Ed., Sec. 96., Idem; Vol. 2, Sec. 779, Cooley, Const., Lim. 248; Huron v. Campbell, 3 S. D., 309, 53 N. W., 182; East St. Louis v. Thomas, 11 Ill., App. 283; Hydes & Goose, Assignees, etc. v. Joyes, 4 Bush Ky., 464; Owensboro v. Weir, etc. 95 Ky., 158; City of Covington v. Hallam & Myers, 16 Ky., Law Reporter, 128; Lowery v. City of Lexington, 75 S. W. Reporter, 202 or 25 Ky. Law Reporter, 392.

SIMS & GRIDER, THOMAS W. THOMAS and SAMUEL D. HINES for appellee.

The city council determined, (1) That it was necessary to proceed to collect back taxes from omitted property; (2) That the work was of such a nature that it would be advisable for the city attorney to have assistant counsel; (3) That the city could afford to pay 15 per cent on the amount collected for such assistance, in addition to the 10 per cent allowed by the charter to the city attorney. So that only two things was left to the city attorney; (1) to determine the character of the proceedings to be instituted, and (2) the selection of the attorney who should assist him.

We insist that both of these duties were properly left to the city attorney.

## AUTHORITIES CITED.

Ky. Statutes, Sec. 3403; Knights v. City of Eureka, 1 Mun. Corp., Cases 247; A. & E. Ency. of Law, Vol. 20; 2d Ed., page 1182, 3; Hitchcock v. Galveston, 96 U. S., 341; Walker &c. v. Foule, 53 L. R. A., 749; Field & Co. v. Clark, 143 U. S., 649; State of Idaho v. Iasmussen, 52 L. R. A., 78; In Re Flaherty, 27 L. R. A., 529; Board of Council, Frankfort v. Murray, 18 Ky. Law Rep., 279; Sunrall v. City of Covington, 16 Ky. Law Rep., 770; Harry Gundling v. City of Chicago, 48 L. R. A., 231; Am. & Eng. Ency. of Law, 1st Ed., Vol. 15, pages 1044, 1045.

OPINION BY CHIEF JUSTICE HOBSON—Affirming.

The council of the city of Bowling Green having received information that a large amount of property in

the city, taxable for city purposes, for the last five years had escaped taxation, adopted on Oct. 3, 1898, an ordinance for the assessment of such property, which, among other things provided as follows: "The city attorney is directed, after said assessment is made, to take such steps by legal proceedings, or otherwise, as is necessary to collect and have paid into the city treasury taxes upon all property liable therefor, but upon which taxes have not heretofore been paid for any year within the last five, and he may employ such assistance as he may deem necessary in the collection of said taxes and preparation and conduct of any suits to be brought or proceedings instituted, and contract to pay therefor, not exceeding fifteen per cent. of the amount of taxes, penalties, and interest collected and paid into the city treasury, so that the commissions of the city attorney, together with the amount contracted for assistance, shall not exceed twenty-five per cent. of the amount of taxes, interest and penalties collected and paid into the treasury. No compensation of any kind is to be paid to the city attorney, or the assistant employed by him, except twenty-five per cent of such amounts as may be collected and paid into the treasury, and only after such amounts are so paid. And the city attorney may, in such cases as the council deems best for him to do so, after reporting to the council and procuring their consent thereto, compromise and settle with any taxpayer upon such just and equitable terms as the council may deem proper." Under the ordinance an assessment was made against the Warren Deposit Bank upon its intangible property, capital stock, and undivided surplus, for the years 1894, 1895, 1896, and 1897, in the sum of $200,000 for each year. The assessments were approved by the council, and thereupon a suit was brought in the name of the city against the bank by the city attorney and W. B. Gaines, whom he had em-

ployed to assist him, to compel the bank to pay the
taxes, interest, and penalties.   While the action was
pending the common council, on April 23, 1900, au-
thorized a compromise of the suit for the sum of
$10,000 in cash to be paid by the bank into the city
treasury.   The compromise was made and the money
paid.

The city attorney had made a contract with Gaines
to pay him a fee of 12½ per cent. upon all sums col-
lected and paid into the city treasury.   The city de-
clined to pay Gaines the $1,250, and he brought this
suit against the city to recover therefor, alleging
that he had been employed by it.   The city denied
the allegations of the petition, in so far as it was
charged that the city had made any contract with
Gaines.   It pleaded that the city attorney was with-
out authority to make any contract on its behalf, in-
sisting that the settlement was made through the ef-
forts of the city officials; that it had paid the city
attorney $1,000; and that this was as much as the
work done by the attorneys was worth.   In reply the
plaintiff alleged that the council had ratified the ac-
tion of the city attorney in employing him, and had
authorized the compromise and received the benefit
of his services with full knowledge of the contract he
had with the city attorney and the services which he
had rendered under it.   The allegations of the reply
were controverted of record.   The proof taken on
the trial showed that the city attorney made the con-
tract with Gaines as alleged in his petition, and that
Gaines assisted him in the preparation and conduct
of the suit, rendering efficient services; the evidence
warranting the conclusion that the compromise was
the result of the skill with which the claim against
the bank was pressed by the city attorney and his
associate, Gaines.   But there is nothing in the record
to show that the council ever ratified the contract
which the city attorney made with Gaines, and

Gaines' rights, as the record is now presented, must depend upon the validity of the contract. The Circuit court, to whom the case was submitted without a jury, made a special finding of fact, to the effect that the contract above refrred to was made with Gaines by the city attorney under the ordinance on behalf of the city. From this he deduced the conclusion of the law that the contract was binding on the city, and it appeals.

It will be observed that by the ordinance the city attorney was authorized to employ such assistance as he deemed necessary in the collection of the taxes, the preparation and conduct of any suits instituted by him, and to contract to pay therefor not exceeding 15 per cent of the amount realized and paid into the city treasury. It is conceded that the council might have employed another attorney to aid the city attorney, and have contracted with him for his compensation, but the question is whether the city is bound on a contract made by the city attorney, he determining whether the assistance was necessary, what attorney he should employ, and what he should be paid. The council is the governing body of the municipality. Ky. St. §§ 3284-3290. The city attorney is the general law officer of the municipality, and it is his duty to attend to all legal business of the city, except prosecutions in the police court. He is paid a salary to be fixed by the council and 10 per cent. upon all sums recovered and collected by him for the city. Ky. St. §§ 3313, 3314. He has no authority under the statute to make any contract on behalf of the city for other counsel, or to create any liability therefor. So, the only question to be determined is whether the council had the right to delegate to him the authority to make the contract in question.

In Knight v. Eureka, 123 Cal. 192, 55 Pac. 768, certain Chinamen brought suit in the Circuit Court of the United States at San Francisco against the city

of Eureka to recover damages for the destruction of their property by a mob in the city.  The city council, by an ordinance, employed S. M. Buck to take charge of the suits and authorized him "to associate with himself in defense of said action some able attorney and counselor in San Francisco, Cal., if, in his judgment, it becomes necessary.  And said S. M. Buck is instructed to conduct said defense as economically as it can be done consistent with vigorous and successful defense thereof."  Acting under this authority, Buck employed Knight to assist him in the defense of the actions, and agreed with him that the city of Eureka would pay him the sum of $5,000 for his services.  Buck and Knight successfully defended the actions, and Knight then sued the city to recover his agreed fee.  It was held he could not recover. The court said:  "Conceding the legality of Mr. Buck's apopintment, we think it did not carry with it the authority to appoint an assistant attorney, nor could the council delegate its power to make such an appointment.  Practically, the authority here delegated left with the agent of the council the discretion to determine the necessity for employing an assistant and to fix his compensation.  These were powers which, in our opinion, the council alone could exercise, and therefore, could not be delegated.  *  * * This power to appoint an attorney is one of those incidental powers which of neecssity reside in the council in order that its granted powers may be fully exercised, but is one of that class of powers devolved upon the council which in their very nature should be exercised by it, and could not, with safety to the public, whose servants the members of the council are, be conferred upon an agent to exercise.  No exigency or emergency is likely to arise where full opportunity would not be given the council to act directly in selecting its own attorney, or his assistant; there is every reason why the power to do so

should be lodged in the governing body itself. We think the true doctrine is correctly stated by Mr. Dillon in Section 96: 'The principle is a plain one, that the public powers or trusts devolved by law or charter upon the council or governing body, to be exercised by it when and in such manner as it shall judge best, cannot be delegated to others.' See, also, Cooley's Constitutional Limitations, 248.''

In Huron v. Campbell, 3 S. D. 309, 53 N. W. 182, the council authorized the city attorney to appoint as many assistant attorneys as the mayor of the city deemed necessary to protect and defend certain suits. The ordinance was held invalid, although the council had authority to employ a city attorney, or an assistant city attorney, and fix his compensation. Among other things, the court said: ''In fixing this compensation (i. e., of the city attorney), the city council must exercise its judgment upon that particular question; and, in determining the necessity for an assistant or assistants, the city council must equally exercise its judgment as to the necessity for an assistant or assistants, and the compensation to be allowed him or them.''

In East St. Louis v. Thomas, 11 Ill. App. 283, the mayor of the city had employed an attorney, agreeing to pay him a fee to attend to certain tax cases in behalf of the city. In holding that the city was not liable, the court said: ''The principle is a plain one that the public powers or trusts devolved by law or charter upon the council or governing body, to be exercised by it when and in such manner as it shall judge best, cannot be delegated to others. Powers are conferred upon municipal corporations for public purposes, and as their legislative powers cannot be delegated, neither can they be bartered nor bargained away. Dillon's Municipal Corporations, § § 96, 97. Another and very important limitation which rests upon municipal corporations is that they shall be

City of Bowling Green v. Gaines.

executed by the municipality itself, or by such agencies or officers as the statute has pointed out. So far as its functions are legislative, they rest in the discretion and judgment of the municipal body entrusted to them, and that body cannot refer the exercise of the power to the judgment of the subordinates, or of any other person.''

In Tampa v. Solomonson, 35 Fla. 446 17 South, 581, the city council appointed four ministerial agents by ordinance, and authorized them to appoint a fifth. It was held that while the city itself could appoint these agents it could not appoint four and vest in them the power to select a fifth agent. To same effect see Ridgeway v. Michellon, 42 N. J. Law, 405. These cases are in accord with the principle everywhere upheld that while ministerial functions may be delegated, powers that involve discretion and judgment on the part of the city council cannot be delegated.

It is insisted that the case at bar does not come within the principle for the reason that the maximum that the city attorney was to pay his assistant was fixed by the ordinance at 15 per cent. of the amount collected; but the rule is not that discretionary powers may be delegated with restrictions or partly delegated. The rule is that they cannot be delegated at all. The city attorney was left here to determine whether assistance was necessary and, if necessary, whom he should employ and what he should pay him, within the maximum fixed by the ordinance. If the council had exercised its own discretion, it might have concluded that no assistance was necessary, or it might have preferred to employ another attorney at the same price for the better protection of the interests of the city, or it might have fixed a lower price than that fixed by the city attorney. The city attorney under the ordinance was left to discharge all the duties pertaining to the

council in this matter, with the single exception that he could not go beyond a certain per cent. To illustrate: If the council had adopted an ordinance authorizing the mayor to buy land for a city hall, the price not to exceed $10,000, would it be contended that the city would be bound upon the mayor's contract when the council exercised no discretion in determining what land should be bought, or how much or what should be paid for the piece of property that was bought? In committing the fiscal affairs of the city to the council, the Legislature had in mind that the common judgment of a number of men on a matter involving discretion is usually, one time after another, safer than the judgment of one man; that it is less likely to be influenced by prejudice, and will usually be more intelligent when the conclusion is reached after the different members have discussed the matter and brought to bear their different experiences and observations. This wise purpose of the law would be entirely frustrated if the governing body of the municipality might, by ordinance, abdicate its discretionary functions and delegate them to some agent of its own choosing The council are elected by the people to have charge of the financial affairs of the city, and public policy does not permit the discretionary duties, which the law has placed upon them for the benefit of the public, to be delegated to others.

We therefore conclude that the circuit court's finding of facts is not sufficient to sustain a judgment against the city. As no evidence was offered on the question of ratification, that question is not now before us, and no opinion is expressed thereon.

Judgment reversed, and cause remanded for a new trial and further proceedings consistent herewith.