## City of Louisville v. Parsons.

(Decided November 7, 1912.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

1. Municipal Corporations—Creation of Debts—Limitation on Right to Incur.—The adoption of an ordinance that may never create any liability on the part of the city, and that does not in itself incur any indebtedness, is not in violation of section 157 of the Constitution, providing that no city shall be authorized to become indebted to an amount exceeding in any year the income and

revenue provided for such year. If it is optional on the part of the city to incur the indebtedness contemplated by the ordinance, no liability is created until the city has elected to create the liability; but if the ordinance, by its terms, creates indebtedness or incurs liability, its validity must be submitted to the test provided in section 157 of the Constitution.

2. Municipal Corporations—Delegation by City Council of Its Power Forbidden.—The council of a city, in the absence of statutory authority so to do, is without power to commit to other persons the powers conferred upon it by the charter.

3. Municipal Corporations—Resolutions—Ordinances.— When the charter of a city provides in terms, or by necessary implication, that legislation shall be enacted by ordinance, the council is without authority to enact legislation by joint resolution, but if the charter is silent on this subject the council may legislate either by resolution or ordinance.

4. Municipal Corporations—Dual Character of.—That municipal corporations have a dual character, one governmental, the other private; in one capacity exercising governmental functions, and in the other performing duties that appertain to the private affairs of the people of the city, it is a well recognized doctrine. But in whatever capacity the city acts the limitations imposed by the charter apply and if the city must act by ordinance concerning governmental legislation, so it must act by ordinance when acting in its private or business capacity.

5. Municipal Corporations—No Implied Liability of.—All persons contracting with a municipal corporation must, at their peril, inquire into the power of its officers to make contracts, and municipal corporations are not liable upon implied promises by reason of benefits received.

CLAYTON B. BLAKEY for appellant.

GIBSON, MARSHALL & CRAWFORD for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This appeal is prosecuted from a judgment in favor of the appellee, Parsons, who was plaintiff below, against the city of Louisville, defendant below, and the record presents only questions of law, there being practically no dispute about the facts.

Some years prior to 1907 the city became owner of all the stock of the Louisville Water Company, a private corporation, although the existence of the water company was continued under its separate charter and as a distinct corporate entity. In 1906 the General Assembly of the State passed an act, now section 3024a, of the Kentucky Statutes, providing for the control and management of the water company by the city, but the city

in 1907 had not availed itself of the provisions of this act, and in 1907 the water company, although all of its stock was owned by the city, continued to be managed and controlled as it had been for some years theretofore. Thus matters stood between the water company and the city on August 27, 1907, when the city council adopted, and the mayor approved, a joint resolution providing for an examination of the affairs of the water company. This joint resolution, among other things, provided that "The mayor of the city of Louisville be and hereby he is requested, authorized, directed and empowered to appoint and employ two persons, hereinafter termed the commission, to make such examinations and report, and to employ such other persons as may be necessary to render stenographic, clerical, engineering or other expert assistance to the commission in the prosecution of its labors as, in the judgment of the mayor and commission, may be necessary or proper for the assistance of the commission."

It was further provided that "The expenses incurred in the employment of the commission and of any other person or persons authorized to be employed hereunder, including any necessary traveling or other expenses, shall, under the direction of the mayor, be paid from the 'General Purposes' fund of the next ensuing year, beginning September 1, 1907, and in the appropriation from such 'General Purposes' fund of the money sufficient to defray such expenses. The mayor shall, from time to time, report to the general council his action under this resolution, and from time to time, as called on by the mayor or by resolution of the general council, said commission shall report the progress that it is making in such examination."

Pursuant to the authority conferred by this resolution the mayor appointed Wm. Marshall Bullitt and E. L. McDonald as commissioners, and the mayor and these commissioners employed the Audit Co., of New York, to investigate and report the condition of the books and accounts of the water company. In addition to this the mayor and commission employed the appellee, Parsons, to make a report upon the condition of the water company from an engineering standpoint, and agreed to pay him for his services $1,171, for which he recovered judgment in this action. The Audit Co. for its services charged the city $38,000, and upon the refusal of the city to pay the amount claimed to be due, it brought suit

in the Federal Court and obtained judgment against the city, the circuit court of appeals reversing the judgment of the district court which was adverse to the Audit Co. The counsel for the city asks a reversal of the judgment against it upon several grounds, but in the view we have of the legal questions presented, it only seems necessary to consider a few of them.

One of these grounds is that the city council, in the adoption of this resolution for the employment and payment of the accountants and engineers therein mentioned, was creating a debt to be paid in a succeeding year, in violation of section 157 of the Constitution.

Another is that the city council had no power to delegate to the mayor and the commission the authority to make the employments and incur the expenses contemplated by the resolution.

And yet another is that the city council could not, by a joint resolution, provide for the investigation that was contemplated by the resolution and incur the expense necessarily involved in such an investigation.

In support of the contention that the resolution, assuming its validity, created a debt payable out of the revenues of the succeeding year, the argument is made that on August 27, 1907, when the resolution was adopted, the city had no funds in its treasury out of which the expenses to be incurred under the resolution could be paid, and as a new fiscal year was to begin on September 1, 1907, the expenses incurred under the resolution must be paid out of the revenue of the next fiscal year, and, therefore, the resolution violated section 157 of the Constitution, providing in part "That no county, city, town, taxing district or other municipality, shall be authorized or permitted to become indebted in any manner or for any purpose to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose." * * *

If by the adoption of the resolution the city had incurred the indebtedness therein contemplated it would undoubtedly have been an attempt on the part of the council to create an indebtedness exceeding the income and revenue provided for the year in which the resolution was adopted, and to pledge the revenues of the succeeding year for the payment of the contemplated indebtedness, in violation of section 157 of the Constitu-

tion. But the adoption of the resolution did not create any indebtedness. The indebtedness was not created until the employments provided for in the resolution were made, and these employments were not made until after the beginning of the next fiscal year. This being so, no indebtedness was created payable out of the revenues of the year in which the resolution was adopted, and the mere adoption of the resolution did not violate the constitutional provision. City of Providence v. Providence Electric Light Co., 122 Ky., 237. The case of Ramsey v. City of Shelbyville, 119 Ky., 180, relied on by counsel for appellant, does not support his position when the principle announced in that case is applied to the facts in this one. In the Ramsey case the ordinance which created the indebtedness was in itself a contract imposing an obligation upon the city, and it was, therefore, held that the adoption of the ordinance, which in and of itself created a liability on the part of the city, was in violation of section 157 of the Constitution. This section of the Constitution does not prohibit the adoption of an ordinance that may never create any liability on the part of the city or that does not in itself incur an indebtedness exceeding the income and revenue provided for the year in which the ordinance is adopted. If it is optional on the part of the city to incur the indebtedness contemplated by the ordinance, no liability is created until the city has elected to create the liability. But if the ordinance by its terms and of itself creates indebtedness or incurs liability, its validity must be submitted to the test provided in section 157 of the Constitution.

The objection that the council was without power to delegate to the mayor and the commission authority to make the employments and incur the expenses provided for the resolution, is in our opinion well taken. The council of the city is a body selected by the inhabitants to administer the affairs of the city. It is an agent of the city with delegated powers, and in the absence of statutory authority to surrender or commit some of its delegated power to other persons, it is without right to do so. It is of the greatest importance to the people of a city that the persons they have selected to manage its and their affairs should be charged with the full responsibility for their safe conduct and not be permitted to avoid or escape this duty by surrendering the functions conferred upon them to other persons. If municipal

bodies, having the broad discretion and the large power they are clothed with, could by the creation of other agencies confer upon them the authority to administer in part the affairs of the city in the employment of yet other agents and in the expenditure of public funds, the people of the city would be deprived in a large measure of the personal qualifications the agents selected by them were supposed to possess and their municipal affairs be confided to the keeping of persons other than the ones selected by themselves. City of Bowling Green v. Gaines, 123 Ky., 562; Lowery v. City of Lexington, 116 Ky., 157; Jewell Belting Co. v. Village of Bertha, 91 Minn., 9; Knight v. City of Eureka, 123 Cal., 192; Foster v. City of Cape May, 60 N. J. L., 78.

But as we have reached the conclusion that the resolution was invalid, and created no liability on the part of the city, it does not seem necessary to extend our views upon this branch of the case, or to consider the arguments of counsel for appellee, that in dealing with the affairs of the water company the city was acting in its private and not in its governmental capacity, and so the rule forbidding the delegation by the city council of a portion of its authority has no application.

Coming now to the question as to the power of the council to create by joint resolution the liability contemplated by the resolution, we will, before taking up the arguments advanced by opposing counsel in support of their respective contentions, notice the provisions of the charter of the city, for the purpose of ascertaining in what manner the council is authorized to legislate.

The only section of the charter to which our attention has been called by counsel in which the word resolution appears is section 2795, reading in part: "Except a resolution to adjourn, every proposed ordinance or joint resolution which has passed the general council shall be presented to the mayor, and if he approve it, he shall sign it, and then it shall be obligatory." * * * But in numerous sections of the charter we find the word "ordinance," and it seems to have been the purpose of the charter that all legislation creating liability or affecting in any important or material manner the people of the city, should be enacted by ordinance. Thus it is provided in section 2777 that "No ordinance shall be passed until it shall have been read in full in each board and free discussion allowed thereon; and no ordinance shall pass both boards on the same day. No ordinance shall

embrace more than one subject, and that shall be expressed in the title. No ordinance shall be altered or amended in any way except by repealing it.'' In sections 2751 and 2774 provision is made for the publication of ordinances, and section 2775 directs that judicial notice shall be taken of all ordinances.

In section 2780 it is provided that ''All officers or agents of the city, if any of its departments not herein required to be otherwise elected or appointed, shall be elected or appointed in such manner as may be prescribed by ordinance.''

In section 2756 it is provided that ''Except as otherwise herein provided, the general council may, by ordinance, prescribe the duties, define the term of office, and fix the compensation and bond and time of election of all officers and agents of the city,'' and in section 2783, the general council is given power to pass ''for the government of the city any ordinance not in conflict with the Constitution of the United States, the Constitution of Kentucky, and the statutes thereof.''

These charter provisions seem to make it clear that it was intended that all legislation should be enacted by ordinance, and the good reason for this becomes apparent when the difference between the enactment of an ordinance and a joint resolution is considered. It will be observed that an ordinance cannot become effective or be adopted by the council at one meeting or in one day, but a joint resolution—for exapmle the one involved in this case—might be adopted at one meeting and became effective within a few minutes after its introduction into either of the separate bodies composing the city council. The passage of an ordinance is attended by deliberation. There is time for reflection between its introduction and its final passage. There is opportunity for the public to consider and object to or approve it, and for the people for or against it to see their representatives and discuss with them the reasons for its adoption or rejection, and for the public press to take the question up and discuss it. In short, an ordinance cannot became effective until there has been time and opportunity for consultation, consideration and reflection. But all of these safeguards, so essential to wise legislation, are wanting in the enactment of joint resolutions. A joint resolution may be introduced, passed, signed by the mayor, and become effective without any time for reflection or consideration or opportunity for

the people concerned to oppose it. If the city council may by joint resolution do what it is authorized to do by ordinance, if it may, as in this case, authorize by resolution the expenditure of thousands of dollars, there is scarcely any limit upon the burden that might be put upon the people of the city by a joint resolution hurried through before there was time or opportunity for public expression. Hasty and inconsiderate action by municipal boards has long been recognized as the source of much mischievous legislation, and to prevent as much as possible the evils resulting from this cause, without interfering with reasonably expeditious legislation, the prohibition against the adoption of ordinances on the day of their introduction was incorporated into the charter of the city.

It is said, however, by counsel for appellee, that in adopting this resolution the council was acting in a private or business and not governmental capacity, and, therefore, the statutory provisions relating to the enactment of legislation by ordinance do not apply or control. It is conceded that when the council undertakes to legislate for the city in respect to its governmental affairs that all the charter requirements must be substantially observed, and all legislation must be enacted by ordinance, but insisted that when the council is acting in what is called its private or proprietary character it may express its purpose in the form of a joint resolution, or in other words, is freed from the statutory limitations applicable when it is acting for governmental purposes, and we have been furnished by counsel with a number of authorities, many of them from this court, recognizing the dual nature of city government. City of Lexington v. Thompson, 113 Ky., 540; Dyer v. City of Newport, 29 Ky. L. Rep., 656; Clark v. Louisville Water Co., 90 Ky., 515; Henderson v. Young, 119 Ky., 224; Illinois Trust & Savings Bank v. Arkansas City, 76 Fed., 271; Baily v. Philadelphia, 184 Pa., 594, 39 L. R. A., 837. But while it is true that municipal corporations are generally treated as having a dual character, one governmental, the other private; in one capacity exercising governmental functions, and in other performing duties that appertain to the private affairs of the people of the city in their collective capacity as individuals, it is also true that all courts recognize the difficulty of describing, with any degree of accuracy, the line that separates the acts of the city in its governmental and in its

private character, and it is not necessary that we should attempt it here. Whatever attitude the city occupied in its dealings with the water company or in the employment of appellee and others to investigate and report on its condition, the council could not put aside and disregard · substantial provisions of the charter from which the city derives all its authority to act in any manner or in any capacity, and which control the council in all that it may attempt to do. If the city has a dual character, and if the council in one state of case is dispensing a part of the governmental power vested in the city, and in another state of case performing duties that appertain to the affairs of the city as a private or business corporation, this difference does not have the effect of releasing it from the limitations and directions imposed by the charter, or give it a free hand to act as it pleases when its acts may happen to fall within the scope of what is called the private or business affairs of the city. Many things that a city council may do in its business capacity are more important and affect more seriously the welfare of the city than many things it may do in its governmental capacity, for example, in the making of contracts, the granting of franchises, and the like and it cannot be said, with any sort of reason or propriety, that the council in these important matters should be unrestrained by the limitations or the directions the charter has imposed on the manner in which legislation shall be enacted. The limitations and directions of the charter should be and are equally as binding on the city and its council when it acts in one capacity as in the other. What it directs the council to do in a certain manner must be done in that manner. As an ordinance is required to enact legislation, which creates indebtedness, or incurs liability or concerning any other matter when the city acts in its governmental capacity, so is an ordinance necessary when it·attempts to legislate in any manner or to create debts, or incur liability, in its private or business capacity. In short, all the charter limitations and directions are, at all times, in full force and effect, and are, in all states of case, applicable, and whatever the city does must be measured and controlled by the powers granted in the charter.

Having these views of the matter, it follows that the council could not, by resolution, incur indebtedness, or create liability, or authorize the expenditure of the pub-

lic funds.   In making this broad statement we do not overlook or put aside the general rule that where the charter of a city is silent as to the manner in which legislation may be enacted it may be enacted by resolution or ordinance.   Board of Education v. DeKay, 148 U. S., 591, 37 Law Ed., 573; City of Crawfordsville v. Braden, 130 Ind., 149, 14 L. R. A., 268; McGavock v. Omaha, 40 Neb., 64; Green v. Cape May, 41 N. J. L., 45; Illinois Trust Co. v. Arkansas City, 76 Fed., 271.

We rest our decision upon the ground that the charter of the city is not silent in this respect but on the contrary expressly, or by necessary implication, provides that all legislation affecting the material or substantial rights of the city shall be enacted by ordinance.   We find no authority in the charter of the city, which is the origin and source of its power, to enact by resolution legislation of the character found in this resolution, and in the absence of such authority, the provisions of the charter forbid legislation by resolution. Meyer v. Booneville, 162 Ind., 165; Cascaden v. Waterloo, 106 Iowa, 673; Barraw v. Krebs, 41 Kansas, 338.

We are, therefore, of the opinion that the city council was without power to provide by resolution for the employment and payment of appellee and so the resolution conferred no authority on the mayor and the commission, or either of them, to employ or agree to compensate appellee.   But the argument is made by counsel that although the resolution may not have conferred the authority attempted yet as appellee rendered valuable service for the city, he should be compensated therefor. A sufficient answer to this is found in the well settled rule that however meritorious a claim may be a municipal government is under no implied obligation to pay for services rendered to it.   City of Bowling Green v. Gaines, 123 Ky., 562; Craycraft v. Selvage, 10 Bush, 696; Allin v. County Board of Education, 148 Ky., 746; City of Newport v. Schoolfield, 142 Ky., 287.   To enable a person dealing with a city to successfully maintain an action against it for services rendered he must show express authority of law in support of his claim or demand.   As said in City of Bellevieu v. Hohn, 82 Ky., 1: "All persons contracting with a municipal corporation must, at their peril, inquire into the power of the corporation or its officers to make contracts.   Those dealing with an agent of the corporation must know the nature and extent of his authority.   *   *   *   Courts have found it necessary

to execute the powers expressly granted and to refuse to make corporations liable upon implied promises by reason of benefits received. This is done for the protection of the inhabitants of a corporation and because the only power a corporation has is from the law creating it, and instead of recognizing a more liberal rule the courts are inclined to hold corporations and their agents within the letter of their grant.''

In further support of his argument that the judgment appealed from should be affirmed, counsel for appellee relies, with confidence, on the opinion of the Federal Circuit Court of Appeals, holding the city liable in the suit of the Audit Company to recover the amount of its claim. We have high respect for the opinions of that court, although of course they are not binding upon us, and regret that we cannot see our way clear to adopt the line of reasoning by which it reached the conclusion in the Audit Co. case, that the city was liable.

The judgment is reversed, with directions to dismiss the petition.