## Jameison v. City of Paducah.

(Decided May 30, 1922.)

### Appeal from McCracken Circuit Court.

1. Municipal Corporations—Contracts.—When one contracts with a city it is his duty to know the right and capacity of the agent of the city with whom he contracts to make such contract, and if he fails to make such investigation or to inform himself, and it turns out that such agent had no power or right to make such contract, the city is not obligated.

2. Municipal Corporations—Delegation of Authority—Discretion.—The city of Paducah is one of the second class and has a commission form of government. At a meeting of its board of commissioners an order was made directing one of the commissioners to procure a named architect to draw plans and specifications for an addition to the city hospital. Four members voted for this order and one against it. The next day the commissioner so authorized undertook to enter into a written contract with the architect for the drawing of the plans whereby he agreed that the city would pay to the architect a certain compensation: Held, that the city cannot delegate its authority involving the exercise of a discretion to another, even to a member of the board, and the contract made by the commissioner at the direction of the board, not having been subsequently ratified, was unenforceable against the city.

WHEELER & HUGHES for appellant.

ROSCOE REED for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This appeal presents the question of whether a written contract made by one of the commissioners of the

city of Paducah with an architect for plans for a public building, by which the architect was to receive five per cent of the estimated cost of the structure as compensation for his services, is valid and enforcible against the city. Paducah is a city of the second class, and is and was at all times mentioned in the pleadings in this action, operating under a commission form of government, which consists of a mayor and four commissioners. In the board of commissioners is vested all legislative, executive and administrative powers of the city. Section 3235c-12, Kentucky Statutes. The city of Paducah operates a public hospital for the benefit of its citizens. It desired to construct a home for the nurses who perform services at the hospital, and on February 24, 1920, Commissioner Williams, a member of the board, offered the following motion: "That he as commissioner of public property, be instructed to have D. Harry Jameison, architect, to draw complete plans and specifications for the completion of additions to the nurses' home at Riverside hospital, folowing the tentative plans heretofore submitted." This motion was carried by a vote of four yeas to one nay. On the next day Commissioner Williams entered into the following written contract with the architect:

"Paducah, Ky., Feb. 25, 1920.

"This agreement, made between D. Harry Jameison, architect, of Langstaff-Orm Lumber Company, incorporated, hereinafter called the architect, and the city of Paducah, hereinafter called the owner, is to witness:

## First.

"The architect agrees to furnish preliminary sketches, contract working drawings, specifications and detailed drawings, for a brick building, known as nurses' home, to be erected for the city of Paducah on hospital site.

## Second.

"In consideration of the foregoing, the owner agrees to pay the architect three per cent of estimated cost of building one-fifth (1/5) when preliminary sketches are completed, balance when drawings and specifications are ready for letting contracts.

## Third.

"It is agreed between the parties hereto that if work upon said nurses' home is postponed, or abandoned, the

compensation due the architect as herein provided shall be due and payable at once. It is further agreed that drawings and specifications are instruments of service and as such are to remain the property of the architect.

FOURTH.

"It is further agreed . . .

> "D. HARRY JAMEISON, Architect.
> "MIKE WILLIAMS, Owner."

We are told that the plans were made by the architect and rejected by the city, although there is no order appearing in the record to that effect. Thereafter the records of the board of commissioners are silent, so far as said plans for the nurses' home are concerned. Later other plans were made, and on May 17, 1920, Commissioner Williams moved that the plans and specifications for reconstructing and building the nurses' home in connection with the Riverside hospital, as prepared by Architect D. Harry Jameison, be accepted, filed and approved by the board of commissioners. This motion was postponed until the following morning at ten o'clock. At a meeting on the next day Commissioner Gilbert offered a motion that the mayor and architect go into conference and thrash out all details regarding plans and specifications of the contemplated nurses' home and report back to the board of commissioners on Monday, May 24th, and this motion was adopted by a vote of all the members of the board. At the meeting on the 24th, on motion of Commissioner Eaton, "the mayor was authorized to sign a contract with Architect D. Harry Jameison, to furnish preliminary sketches, contract working drawings and to do general superintendence in the erection and completion of the nurses' home at Riverside hospital, provided the entire compensation of said architect shall not exceed 5 per cent of the total cost of said building to be constructed, and to be based on the cost of work to be done hereafter." Following this, on June 16th, the mayor entered into a contract with the architect, Jameison, for plans and specifications for the addition to the hospital, and this contract was filed with and approved by the board of commissioners on June 21, 1920. On July 2nd Commissioner Williams moved that the plans of the nurses' home, as per contract, be received, filed and approved. This motion was unanimously carried. It appears, however, that the order made by the board on February 24th was the

only one relating to the plans and specifications which is the subject of this litigation. The other orders which we have copied above, either *verbatim* or in substance, relate to the second set of plans and specifications which were later actually accepted by the city and for which Jameison has been paid in full.

The city is refusing to pay for the first set of plans made by the architect under his contract with Commissioner Williams, of date February 25, 1920, (1) because it says the plans were rejected; (2) the commissioner, Williams, had no power or authority to enter into a contract with the architect whereby the city would be bound to pay him for such plans. The order under which Commissioner Williams proceeded instructed him to have D. Harry Jameison, architect, draw complete plans and specifications for the completion of additions to the nurses' home at the Riverside hospital, following the tentative plans theretofore submitted. There is no mention that he should enter into a contract with Jameison on behalf of the city, nor was he given authority to promise to pay Jameison for the plans any definite sum, or any sum at all. This order was a public record subject to inspection by the architect and others interested in it. It is said for appellant that the order entered by the board of commissioners, on February 24, 1920, having been voted for and approved by four out of five members of the board, was full authority to Commisioner Williams to enter into a binding contract for and on behalf of the city. But this position cannot be maintained. A city council, board of commissioners or fiscal court cannot delegate to another, not even its individual members, the performance of official duties involving the exercise of discretion, and if it attempts so to do the action and contract of the agent or committee is not binding on the official body. Floyd County v. Bridge Company, 143 Ky. 696. In the Floyd county case, *supra*, the fiscal court attempted to appoint a committee of three good business men of the city to make contracts for three highway bridges and to attend to the location and erection thereof. They bought three steel bridges and caused them to be erected. When the work was completed the committee offered to make a written report of its work and have the fiscal court ratify its doing, but the court refused to receive the report, ratify the contract or pay for the bridges. The bridge company sued the county for the value of the bridges and we held that there could be no re-

covery, saying: "The general rule is that fiscal courts or other county boards having charge of county affairs, may, in the exercise of the powers conferred upon them, appoint agents to discharge ministerial duties not calling for the exercise of reason or discretion, but cannot go beyond this and delegate to others the discharge of duties which call for reason and discretion and which are regarded as public trusts. (House v. Los Angeles County, 104 Cal. 73; Scollay v. Butte County, 67 Cal. 247.)"

In the case before us the board of commissioners attempted to delegate to Commissioner Williams the power and authority to act for and on behalf of the city in making a contract for plans and specifications, without limit as to price. This was an attempt to confer on him the exercise of a discretionary power. He could have agreed to pay the architect $10,000.00, or any other sum, for the plans, in the exercise of his discretion. If such contracts were binding the taxpayers of municipalities would often suffer rape. Fortunately such undertakings can not be enforced for the reason that a discretionary power cannot be delegated by a city or its board of commissioners. Had the board of commissioners ratified the said contract made by Williams with the architect and entered a proper order, the city would have been bound, but this was not done. Considered in this light the most that this ordinance conferred upon Commissioner Williams was authority on behalf of the city to consult with the architect concerning plans and specifications and to submit any proposition which he might receive from the architect to the board of commissioners of the city for their consideration and approval. Instead of this he attempted to enter into the contract above copied whereby he undertook for the city to pay Jameison three per cent of the estimated cost of the nurses' home, which commission Jameison now contends amounts to $710.00, the sum sued for in this action. This was beyond his authority, and the contract was absolutely void as to the city.

We have established and consistently maintain the rule that persons dealing with a municipal corporation are bound, at their peril, to know that the contracts made by the officials of such corporation are executed in the mode pointed out by its charter and ordinances, and if such persons fail to inform themselves as to whether the official has power to contract they must suffer the consequences. Floyd County v. Oswego Bridge Co., *supra;*

City of Newport v. Schoolfield, 142 Ky. 287; Trustee of Bellevue v. Hohn, 82 Ky. 2; Worrell Manufacturing Co. v. Ashland, 159 Ky. 656; City of Louisville v. Parsons, 150 Ky. 420; 19 R. C. L., p. 1063. The defense to this proceeding is based upon the well-known principle that a municipal corporation is not bound by a contract made in its name by one of its officers or by a person in its employ, though within the scope of its corporate powers if the officer or employe had no authority to enter into such a contract on behalf of the corporation. 19 R. C. L., p. 1066. A city council or board of commissioners of a municipality can speak only through its records. The city can contract in no other way. It cannot be made liable on an implied contract, except where it has received goods, property, or benefits, and applied the same to its own use, and the said property or benefits can be restored to the person from whom the municipality obtained the same without destroying the city property to which it is attached, and then its liability goes only to the extent of the reasonable value of such material in the place where found, after the city elects to keep it.

It was the duty of Jameison, the architect, to inform himself of the authority of which Commissioner Williams was possessed to make contracts for the city of Paducah and failing to do so he must be held to have known that he had none, and must suffer the consequences. Commissioner Williams had no authority from the city of Paducah to make any contract or to do anything with respect to the plans and specifications except as set out in the order of February 24, 1920, which is entirely too meagre, indefinite and uncertain to form the basis of an action to recover money of the municipality. The contract which he made was entirely in excess of the authority conferred by that order and was, therefore, ineffectual to bind the city of Paducah.

As the trial court, at the conclusion of the evidence, peremptorily instructed the jury to find and return a verdict for the appellee city, there was no error committed to the prejudice of the appellant Jameison, and the judgment must be and is affirmed.

Judgment affirmed.