# Booth et al. v. City of Owensboro et al.

(Decided June 21, 1938.)

WOODWARD, DAWSON & HOBSON and FRANKLIN P. HAYS for appellant.

R. MILLER HOLLAND and DAN GRIFFITH for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

This taxpayers' suit, under the Declaratory Judgment Act, Civil Code of Practice, section 639a-1 et seq., is to test the legality of a proposed plan for financing the erection and equipment of a new hospital for Owensboro and Daviess County. The present city hospital facilities, which are also used by the county under contract, are inadequate, and it appears that Federal

funds are available for the construction of the new building. The present hospital property owned by the city is worth at least $60,000, but it is subject to a lien for $5,700 to secure the payment of that sum to the German American School Association of Owensboro, a charitable corporation, which conveyed the property to the city. This obligation, however, bears no interest and the lien is enforceable only in the event the city fails at any time for twelve consecutive months to provide for and maintain a hospital on the property. It appears that the association and the city have been exercising a joint control of the hospital in the past. It is proposed to create a non-profit corporation under the provisions of Chapter 32, Article 8, Kentucky Statutes, section 879 et seq., to be named "Owensboro Daviess County Hospital," for the purpose of furthering and promoting health, rendering medical and surgical aid to the residents of the county and city and other charitable objects. Its directors are to be the County Judge of Daviess County, the Mayor of Owensboro, and seven others to be chosen, two of them by the fiscal court, two by the city commissioners, and three by the association. It is proposed that the city convey its property to this holding company and it will erect additional buildings and equip the same at a cost of not less than $165,000, issuing revenue bonds therefor. In turn, the city and county jointly will lease the property for one year with the exclusive option of annual renewals for nineteen years. The hospital is to be used and maintained for the benefit of the residents of the county and city. Each of those municipalities will pay $6,000 annual rental and in addition the insurance premiums and all taxes on the property and will refund to the holders of the bonds the ad valorem and income taxes thereon. The annual rentals are to be applied to amortize the bonds. The city or county may severally or jointly purchase the property at any time by paving all outstanding bonds. Whenever the bonds shall have been satisfied by the application of the rentals, the holding company, that is the Owensboro Daviess County Hospital, binds itself to reconvey the property to the city or county or to them jointly. In short, the plan of financing the venture is, with apparently one important exception, similar in its essential features to that frequently held to be valid. See Sizemore v. Clay County, 268 Ky. 712, 105 S. W. (2d) 841.

Under the proposed arrangement the $5,700 lien on the city's property shall become subordinate to the mortgage trust deed securing the bonds. It is disclosed that the city has already reached the maximum indebtedness authorized by Section 158 of the Constitution, but the county has a relatively small debt. It also appears that there is available for the first year a sufficient amount of unencumbered anticipated revenue of the county and of the city to pay the one year's obligations.

We find it necessary to pass on two questions raised as to the validity of the plan.

1. The proposed "Contract, Lease and Option," under which the completed hospital will be leased and operated, contains the provisions that should the buildings be totally or partially destroyed by fire or other elements so as to make them untenantable for the purposes designated, "the City and the County agree to replace the said premises or to reconstruct the said buildings and to install the equipment therein as they existed prior to the said total or partial destruction, provided that the insurance carried by the City and County and made payable to the Hospital (or the said trustee for the bondholders) is to be used for the said purpose before the City and County (in the proportion in which each has contributed consideration to the hospital properties) are compelled to pay any additional sums for said replacement." It seems to the court that this is an obligation continuing throughout the term of twenty years or until the bonds shall have been paid, and that it is assuming an indebtedness much in excess of the available anticipated revenue of both the county and the city, contrary to Section 157 of the Constitution. And so far as the city is concerned it has the effect of increasing its debt already in excess of the constitutional limitations set by Section 158.

2. A second question we shall consider is that relating to the management of the institution. That provision is as follows:

"The actual operation of the hospital properties by the City and the County as lessees shall be in a Board of Hospital managers which Board shall be identical in membership with the Owensboro Daviess County Hospital and the members of which shall be elected in the same manner and shall hold

office for the same periods of time and under the same terms and conditions as the members of the Owensboro Daviess County Hospital. In case of dispute within any bodies having the right to appoint members of the Board of Hospital Managers, the trustee or trustees of bondholders of the Owensboro Daviess County Hospital shall have the right to act as arbiter to settle said dispute."

As already stated, the board of directors and members of the holding company consist of three representatives of the county, three of the city, and three of the German American School Association. So it is proposed that the management and operation of the hospital shall be in part by this private corporation or three citizens chosen by it. More than that, in case of a dispute in the fiscal court or the board of city commissioners as to appointment of the members of this board of managers whom they are authorized to name, their selection shall be made by the trustee of the bonds issued by the holding company.

As instrumentalities of the commonwealth, cities and counties have such powers as have been delegated to them by the legislature, expressly or by necessary implication, to be exercised in the manner specified. There is an implication not only of the withholding of other powers but of the prohibition of the exercise of any authority in excess of the grant or in a manner different from that permitted. Reconstruction Finance Corporation v. City of Richmond, 249 Ky. 787, 61 S. W. (2d) 631; Nourse v. City of Russellville, 257 Ky. 525, 78 S. W. (2d) 761; Jefferson County v. Jefferson County Fiscal Court, 269 Ky. 535, 108 S. W. (2d) 181.

We consider first the power of Owensboro, a city of the third class. Section 3290-4, Kentucky Statutes, grants the power to the common council (or board of city commissioners, Section 3480b-12) to establish and erect hospitals and make regulations for the government thereof and to acquire and hold land for that purpose. The Board of Public Works (Section 3426) or the Commissioner of Public Works (Section 3480b-18) has the exclusive right to employ the chiefs and heads of hospitals and employees therein subject to specified restrictions, Section 3437. Section 3438 and Section 3480b-12 give to the same boards power and control over the construction and maintenance of all public

buildings and, specifically, the exclusive power to organize and control a hospital. Section 3448 states they shall have charge of all expenditures for paupers and shall employ a city physician for them. Section 3444 declares that any contract made in violation of the provisions of the Act, of which the foregoing are a part, shall be void.

The powers of a county in this relation seem to be much less restrictive. Section 1840, Statutes, confers upon the fiscal court the power to provide a hospital for the sick and poor or to contract with any hospital in the county to do so. It is also authorized to appropriate funds for the benefit of infirmaries for the sick, located in the county, which authorizes an appropriation to a private hospital to be used and expended by its authorities rather than the public officers. Robinson v. Mercer Fiscal Court, 218 Ky. 452, 291 S. W. 721. A county having adequate funds may acquire a hospital by purchase. Combs, County Judge, v. Center, 234 Ky. 364, 28 S. W. (2d) 37. Section 913-1 gives power to every county to enter into contracts with any city owning and operating its own municipal hospital for hospitalization of poor and indigent persons resident therein, and if there is no city-owned hospital, to make similar contracts with a privately owned hospital therein or in an adjoining county, and make payment out of county funds accordingly. Section 938e-1 authorizes the fiscal court of a county containing a city of the third class to establish and erect hospitals for the use of its citizens. For that purpose the county may lease property in the county, or acquire any interest, franchise, easement, right or privilege in property that may be required for the purpose of constructing, furnishing, maintaining or operating a public county hospital. This gives very broad powers for the acquisition of a hospital. But Section 938e-5 provides that such county hospital "shall be at all times under the control of the proper county authorities," and that the fees to be charged patients "shall be fixed, regulated and controlled by the governing authorities of said hospital." The Act of which those sections are a part (Chapter 52, Acts of 1920) provides for the issuance of bonds and the levying of taxes accordingly.

We are of opinion these statutes authorize a city and a county to join in the operation and maintenance

of a hospital, but the court finds no authority in them or in any other statute for either the city or the county to take a private corporation or individuals into partnership in conducting such public enterprise. To do so is to surrender official responsibility and to delegate the public function to persons who are not responsible to the people. The officers of a municipal corporation cannot so delegate the governmental discretionary authority confided to it by the legislature. Franke v. Paducah Water Supply Co., 88 Ky. 467, 11 S. W. 432, 718, 11 Ky. Law Rep. 17, 4 L. R. A. 265; Lowery v. City of Lexington, 116 Ky. 157, 75 S. W. 202, 25 Ky. Law Rep. 392; City of Bowling Green v. Gaines, 123 Ky. 562, 96 S. W. 852, 29 Ky. Law Rep. 1013; City of Louisville v. Parsons, 150 Ky. 420, 150 S. W. 498; Jameison v. City of Paducah, 195 Ky. 71, 241 S. W. 327; County Board of Education v. Durham, 198 Ky. 733, 249 S. W. 1028; Inland Waterways Co. v. City of Louisville, 227 Ky. 376, 13 S. W. (2d) 283. Cf. Woman's Hospital League v. City of Paducah, 188 Ky. 604, 223 S. W. 159. See, also, 19 R. C. L. 798; McQuillen on Municipal Corporations, Sections 392, 399, 1271, 1272, 2616. Because of the express provisions of the several statutes cited, the cases, of which Spahn v. Stewart, 268 Ky. 97, 103 S. W. (2d) 651, is typical, holding that when a power has been delegated to a subordinate governmental unit, its legislative body has the implied right to select the names for accomplishing the purposes, can have no application.

We are, therefore, constrained to hold and declare that in the two respects indicated the proposed plan is not valid. Other questions are reserved.

The judgment is accordingly reversed.