**LOUISVILLE AND JEFFERSON COUNTY AIR BOARD, Plaintiff,**

v.

**AMERICAN AIRLINES, Inc. (a corporation), Defendant.**

**LOUISVILLE AND JEFFERSON COUNTY AIR BOARD, Plaintiff,**

v.

**TRANS WORLD AIRLINES, Inc. (a corporation), Defendant.**

**LOUISVILLE AND JEFFERSON COUNTY AIR BOARD, Plaintiff,**

v.

**EASTERN AIR LINES, Inc. (a corporation), Defendant.**

Civ. A. Nos. 3503, 3504, 3506.

United States District Court
W. D. Kentucky,
Louisville Division.

April 15, 1958.

James W. Stites, T. Kennedy Helm, Jr., Louisville, Ky., for plaintiff.

Wilson W. Wyatt, Gordon B. Davidson, Louisville, Ky., for defendants.

BROOKS, District Judge.

Separate actions were instituted by the plaintiff, Louisville and Jefferson County Air Board, against the defendant Eastern Air Lines, Inc., the defendant American Airlines, Inc., and the defendant Trans World Airlines, Inc. The plaintiff will be referred to herein as the Air Board and the defendants as the Airlines. These cases are presently submitted on the Air Board's motion for partial summary judgment and motion of the Airlines to stay proceedings until arbitration shall be had in accordance with the provisions of the lease agreements between the parties.

The facts essential to a decision in these cases are not in dispute. In 1947 each of the Airlines entered into similar lease agreements with the Air Board for the use of facilities at Standiford Field at certain agreed rentals for a period of ten years. The leases granted the Airlines an option to renew for a like period, Article I₁ of the leases providing:

"* * * Lessor hereby grants to Lessee an option to renew this lease for one (1) additional term of ten (10) years, rentals, fees and charges to be mutually agreed upon, provided that Lessee shall notify Lessor in writing of Lessee's exercise of such option as to any such renewal term not less than six (6)

months before the expiration of the original term hereof. * * * "

The Airlines gave the Air Board timely notice of their renewal of their options and the renewals of the options were acknowledged by the Air Board. After the exercise of the options certain negotiations took place between the parties in an attempt to agree upon the rentals for the renewal terms, but the parties were unable to reach an agreement. In event of failure to mutually agree upon renewal terms after exercise of the options, Article III(C) of the leases provides:

"Rentals and Fees for Renewal Term. In the event Lessee exercises its option to renew this Lease in accordance with the provisions hereof, the rentals, fees and charges for such renewal term shall be as mutually agreed upon between Lessor and Lessee prior to the end of the term. The rentals, fees and charges applicable for each such renewal term shall be paid by Lessee to Lessor in the same manner as hereinabove provided.

"In the event that Lessor and Lessee do not mutually agree as to such rentals, fees and charges for any such renewal term, the same shall be determined by arbitration, as hereinafter provided, and pending such determination the rentals, fees and charges last in effect shall continue in full force and effect."

Article XIX of the leases further provides as follows:

"Any controversy or claim arising out of or relating to, the provisions of Article II, * * * (and) Article III(C) * * * of this Agreement, which shall not have been settled by agreement between the parties hereto within ninety (90) days after notice of such controversy or claim has been served by the claimant upon the other party, shall be settled by arbitration in accordance with Chapter 417 of Kentucky Revised Statutes and the Commercial Arbitration Rules of Procedure, then obtaining, of the American Arbitration Association, and judgment upon the award rendered may be entered in any court having jurisdiction thereof."

Prior to the expiration of the original term of the leases on June 11, 1957, the Air Board gave the Airlines a notice of controversy provided for in Article XIX, but no steps have been taken by the parties to initiate arbitration proceedings, and they have not been able to mutually agree upon rental terms for the renewal period. The original term of the leases having expired on October 31, 1957, the Airlines are now seeking to enforce the arbitration provisions of the leases which the Air Board refuses to acknowledge as binding upon it.

The controlling issue to be decided is whether or not the covenant in the leases to submit to arbitration the question of rentals for the renewal term is a valid and enforceable agreement.

The Air Board was created by statute. It is a body "politic and corporate with the usual corporate attributes, and in its corporate name may sue and be sued, contract and be contracted with, and do all things reasonable or necessary to effectively carry out the work contemplated by KRS 183.140 to 183.210." It is a bipartisan body composed of six members appointed jointly by the Mayor of Louisville and the Judge of Jefferson County. KRS 183.140. The express purpose for the creation of the Air Board was "to establish and maintain one or more airports and facilities to provide for transportation by air of passengers, property, express and mail, and to provide one or more airports and facilities for the use of the Federal Government." KRS 183.150. The Legislature gave the Air Board "such powers as may be necessary or desirable to promote aviation and the development of facilities for air travel and transportation." KRS 183.-150. The Air Board is empowered to acquire property by condemnation or otherwise and to "erect, equip, operate and maintain, on such land, buildings and equipment necessary and proper to es-

tablish, conduct and maintain airports or air navigation facilities." KRS 183.-170. It is given the right to "prescribe such rules and regulations as it deems necessary," KRS 183.160; to "borrow money on its own credit in anticipation of the revenue to be derived from appropriations or other income for the fiscal year in which the money is borrowed," KRS 183.200; to "issue revenue bonds under the same conditions as are provided for other governmental units," KRS 183.205 and KRS 183.215; and in this connection if revenue bonds are issued for the acquisition of airport facilities, the Air Board is required to "definitely fix and determine the amount of revenue necessary to be set apart and applied to the payment of principal and interest of the bonds * * * ," and the Air Board is required to see that "the rates and fees to be charged for the services of the airport facilities shall be fixed and revised from time to time so as to be sufficient to provide for payment of interest upon all bonds and to create a sinking fund to pay the principal thereof when due, and to provide for the operation and maintenance of the airport facilities and an adequate depreciation account." KRS 183.680. Title to the property acquired by the Air Board must be held in trust for the purposes for which the Air Board was created and is free from all taxation or assessments. KRS 183.210. Functions of the Air Board in the establishment, maintenance, equipment and operation of airports are declared to be "public, governmental and municipal functions, exercised for a public purpose, and matters of public necessity." KRS 183.476.

█ It is seen that the Legislature has given broad powers to the Air Board to enable it to establish and maintain airports but has elected to leave to the discretion of the Air Board the complex and multitudinous details necessary for the accomplishment of its purposes. It is also obvious that one of the more essential maintenance responsibilities conferred on the Air Board by necessary implication of the statutes is to determine by negotiation or otherwise the rentals to be charged the Airlines for use of the airport facilities. However, since the parties have been unable to agree upon rental charges for the renewal term, the lease agreements place this responsibility with impartial arbitrators over which the Air Board has no control and whose decision will be final as to the rates to be charged for the 10-year renewal period.

█ The Air Board as an instrumentality of the Commonwealth of Kentucky is vested with "public, governmental and municipal functions," KRS 183.-476, supra. It is a "municipality." Commonwealth v. L. & N., 6136 Jefferson Circuit Court; also see Brown v. Board of Education of City of Newport, 108 Ky. 783, 57 S.W. 612; Rash v. Louisville & Jefferson County Metropolitan Sewer District, 309 Ky. 442, 217 S.W.2d 232; Miles v. Lee, 284 Ky. 39, 143 S.W.2d 843. It was created for the purpose of establishing and maintaining airports which function without exception has been held to be a public enterprise. Annotation, 161 A.L.R. 733. Since the Air Board is a public body engaged in the performance of a public duty, it is subject to all general laws applicable to other political subdivisions and without express statutory permission it is not permitted to delegate and surrender to others its official powers which are discretionary in character and require the exercise of judgment. This general rule that discretionary duties of a public agency as distinguished from duties that are purely ministerial cannot be delegated seems well settled and finds support in many cases decided by the Court of Appeals of Kentucky, among them being City of Bowling Green v. Gaines, 123 Ky. 562, 96 S.W. 852; Floyd County v. Owego Bridge Co., 143 Ky. 693, 137 S.W. 237; City of Louisville v. Parsons, 150 Ky. 420, 150 S.W. 498; Inland Waterways Co. v. City of Louisville, 227 Ky. 376, 13 S.W.2d 283; Jameison v. City of Paducah, 195 Ky. 71, 241 S.W. 327; Craig v. O'Rear, 199 Ky. 553, 251 S.W. 828; Board of Park Commissioners of City of Louisville v. Speed, 215 Ky. 319, 285 S.W. 212; Booth v. City of

Owensboro, 274 Ky. 325, 118 S.W.2d 684; City of Middlesboro v. Kentucky Utilities Co., 284 Ky. 833, 146 S.W.2d 48; Board of Park Commissioners of Ashland v. Shanklin, 304 Ky. 43, 199 S.W.2d 721. It is therefore concluded that the Air Board was without authority to contract to delegate to arbitrators its public and discretionary duty to fix rentals for the use of the facilities of the airport.

 The Airlines insist that if the arbitration provisions of the leases are unenforceable for any reason, the Court in the exercise of its equitable powers is required to hear evidence and fix reasonable rentals for the renewal term, relying upon Slade v. City of Lexington, 141 Ky. 214, 132 S.W. 404, 32 L.R.A.,N.S., 201. The ruling in Slade v. City of Lexington, however, was based upon a legally enforceable contract binding upon both parties to renew their contract upon terms to be mutually agreed upon and where a substantial investment required by the terms of the contract for construction of a waterworks system would be lost if the contract was not renewed. In the present case there is no legally enforceable contract binding upon the parties, it having been determined that the renewal provisions of the leases are unenforceable and void. Generally a court does not have the power to reform a void contract in order to make it legal and then enforce it. As stated in Hedges v. Dixon County, 150 U.S. 182, 14 S.Ct. 71, 74, 37 L.Ed. 1044. "Where a contract is void at law for want of power to make it, a court of equity has no jurisdiction to enforce such contract, or in the absence of fraud, accident, or mistake to so modify it as to make it legal, and then enforce it." Also see Allen v. Whitely, 209 Ky. 234, 272 S.W. 724; Duncan v. Jenkins, 215 Ky. 543, 266 S.W. 783.

Having reached the conclusion the arbitration provisions of the leases are unenforceable and void and the Airlines are not entitled to specific performance of the void covenants of their leases, it is not necessary to consider the question of whether or not the establishment of renewal rentals is an arbitrable issue. It is also unnecessary to decide whether or not the Airlines have waived their right to invoke the arbitration provisions of their leases.

Counsel for the plaintiff will prepare judgment in accordance with this memorandum.