## County Board of Education v. Dudley, et al.

(Decided June 17, 1913.)

### Appeal from Hopkins Circuit Court.

1. Officers—Contract With Under Authority of a Statute.—One who contracts with a public officer acting under the authority of a statute can contract only in the manner pointed out by the statute.

2. Schools and School Districts—Employment of Teacher—When Contract Not Enforcible.—Where a teacher acting under a verbal employment made pursuant to a resolution of a County Board of Education taught a school pursuant to sub-section 8 of section 4426 A of the Kentucky Statutes which empowered the Board of Education to contract for such service, in writing, the teacher had no enforceable contract and cannot recover for his services.

H. F. S. BAILEY for appellant.

C. J. WADDILL for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

Sub-section 8 of the Act of March 24, 1908, incorporated into the Kentucky Statutes as sub-section 8 of section 4426A, provides, in part, as follows:

"Within two years after the passage and approval of this act, there shall be established by the county board of education of each county one or more county high schools: PROVIDED, there is not already existing in the county a high school of the first class, if such high school already exists, and if the county board may be able to make such an arrangement with the trustees or board of education of said high school as will furnish to the pupils completing the rural school course free tuition in said high school, then said high school may be considered as meeting the purpose of this law without the establishment by the board of another high school. The county board of education in the various counties shall

have full power and authority to unite with the governing authorities of any city or town in their respective counties for the purpose of establishing a high school for the joint use of the city or town and such county, and to unite with such authorities for the purpose of maintaining such a high school if one be already in existence. For this purpose said county boards are hereby given full power and authority to make such contracts as they may deem necessary or proper for the establishment and maintenance of such high schools for the joint use of the county and such city or town. Said contract shall be in writing and shall contain full and complete stipulations as to the employment and compensation of teachers, courses of study, payment of the expenses of the school and the control and discipline of the pupils."

For the purpose of complying with this statute the County Board of Education of Hopkins County contracted with the Board of Trustees of the Madisonville Graded Common School District in the spring of 1909, whereby the latter agreed to receive into its established high school all the pupils of Hopkins County who were prepared to take the high school course, at an agreed charge of $4 per month for each of the first twenty-five pupils so attending, and $3.50 per month for each pupil in excess of twenty-five. This contract was for three years, and the Madisonville District School was given the exclusive right to teach the county high school for said term.

In 1911 the County Board of Education determined to extend the county high school privileges to the common school graduates who could not attend the Madisonville High School; and in order to carry out this scheme the County Board of Education took action, as is shown from the following extract from its minutes of August 15, 1911:

"RESOLVED, That the County Board of Education ask the Principals of the Earlington, Hanson and Dawson Springs schools to meet with the superintendent of the Madisonville school to prepare a report to the county board relative to the education of our common school graduates, with a view of extending the county high school privileges."

On September 11th, the principles of the Madisonville, the Hanson, and the Earlington high schools joined in a written report to the County Board of Education, in which they stated they believed the high schools at Daw-

,son Springs, Hanson, Earlington and Madisonville all filled the requirements of the law for county high schools, and in their judgment the chances for an education would be very much increased to deserving pupils if the high school contract was extended alike to each of those schools. On the same day the County Board of Education took further action, as is shown by the following extract from its minutes, to-wit.

"Moved that the report of the school men be adopted, and that the terms of the high school tuition contract be extended to the schools at Dawson Springs, Hanson and Earlington as recommended, beginning with this school year; and to guarantee that the Madisonville school shall receive a sum not less than one thousand dollars for (from) high school tuition money for school year 1911-1912, provided the entire tuition money of all high schools in the county for the year amounts in the aggregate to that amount; or, should the aggregate tuition fall below this amount, then the Madisonville school shall receive only the amount of such aggregate calculated upon the terms of the contract now in force with the Madisonville school; the sum of high school tuition that may be agreed in excess of this one thousand dollars to be paid to the Dawson Springs, Hanson, and Earlington schools in proportion to the number of high school pupils enrolled by them entitled to the free high school tuition."

This motion was carried, and by a subsequent resolution of November 11, 1911, a tax was levied to support the schools.

The Earlington school was not a graded school; it was a common school of common school district No. 45, and was taught by teachers, including the appellees, Dudley and Weir, employed by the trustees of Educational Division No. 2 to teach the public school of the common school district. Appellees, Dudley and Weir, taught the high school course under the resolution above set out, having a total of twenty-eight pupils, for which they presented their bill to the County Board of Education for $886.50. The board refused to pay the bill, whereupon Dudley and Weir instituted this suit and obtained a judgment for the amount claimed, and from that judgment the County Board of Education prosecutes this appeal.

The agreed statement of facts show that there was no regular organized high school at Earlington, and that

all the teaching done by appellees was done in the public school building at Earlington under the control and supervision of the trustees of Educational Division No. 2 and the County Board of Education, and there was no other governing authority over said Earlington High School. There is no contention that the school was not taught, or that the pupils there taught were not eligible to take the high school course, or that the bill is incorrect as to amount. It is contended, however, that as there was no written contract, there was no compliance with the statute, and the appellees cannot recover for that reason.

It will be noticed that the statute above quoted contemplates the establishment of one or more county high schools by the County Board of Education; but if such a high school already existed, it was competent for the County Board of Education to arrange, by contract, with the trustees or Board of Education of such high school to teach the high school pupils who had completed the rural school course, and that such high school course should be considered as meeting the purposes of the law without the establishment of any other or distinct high school by the County Board of Education. The statute further gives the right to the County Board of Education in the various counties full power and authority to unite with the governing authorities of any city or town in the county for the purpose of establishing a high school for the joint use of the city or town and the county, and to be maintained jointly. For the purpose of executing the power thus conferred, the County Board of Education is given power to make such contracts as it might deem necessary or proper, it being expressly provided, however, by the statute that "said contract shall be in writing and shall contain full and complete stipulations as to employment and compensation of teachers, courses of study, payment of the expenses of the school and the control and discipline of the pupils." The purpose of this requirement of the statute is plain. It meant that the high school should be a high school in fact, and not a mere pretense. It was the duty of the County Board of Education either to establish a high school of its own, or to provide one by contract with the governing authorities of an existing high school; but in case it should contract for high school teaching, the contract should be in writing, and should contain full and complete stipulations as to employment and com-

pensation of teachers, courses of study, payment of the expenses of the school and the control and discipline of the pupils.

It is clear from this record that there was no high school existing at Earlington; on the contrary, the appellees were teachers in the common school for that district, and undertook under the contract supposed to have been created by the resolution above set out, to teach a high school course in connection with the common district school. Clearly, this was not a compliance with the statute. In the first place, there was no contract in writing, and the appellant can contract in no other way. The resolution of the board did not constitute a contract, since it was unilateral only and did not bind the appellees to perform any service for the County Board of Education. Furthermore, it did not contain any provision whatever, either complete or cursory, as to the courses of study, payment of the expenses of the school, or the control and discipline of the pupils.

Section 4506 of the Kentucky Statutes, prescribing the duties of teachers, and their employment and discharge, contains this further express provision:

"But no teacher shall be required or under any obligation to teach any other than the common school branches prescribed by the State Board of Education in the common schools, unless it shall be so specified in a written contract with the trustees."

In the case at bar there was no written contract signed by either party, and that being true, appellees are not in a position to maintain an action. Mingo v. Trustees of Colored School District, 113 Ky., 475. It is a well established rule that one who contracts with a public officer acting under the authority of a statute, can contract only in the manner pointed out by the statute; otherwise he has no contract. City of Louisville v. Parsons, 150 Ky., 420.

It follows that the judgment of the lower court will have to be reversed for further proceedings consistent with this opinion.