## Board of Trustees of Hartford Graded School, et al v. Ohio County Board of Education, et al.

(Decided November 28, 1916.)

### Appeal from Ohio Circuit Court.

1. Schools and School Districts—Contracts Between Graded School Trustees and Boards of Education.—Under section 4426a, subsection 8, of the Kentucky Statutes, contracts may be entered into between county boards of education and trustees of graded schools by which pupils who have been graduated from the common schools of the county may attend the graded schools. But these contracts must be in writing and contain, in substance at least, the matter pointed out in the statute.

2. Schools and School Districts—Contracts Between Graded School Trustees and Boards of Education.—The board of education and the trustees of a graded school can only act in their official capacity and some record should be kept showing what action they took in respect to the matter under investigation. Verbal

agreements and arrangements between these bodies, not contained in a written contract, and of which no record is kept, are not binding on or enforcible by either.

BARNES & SMITH and C. M. BARNETT for appellants.

ERNEST M. WOODWARD and C. M. CROWE for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Although the amount in controversy in this case is under five hundred dollars, and the judgment will be affirmed, we have granted an appeal and will write an opinion on account of the public nature of the question involved.

It is provided in part in section 4426a, subsection 8, of the Kentucky Statutes that there shall be established by the county board of education one or more high schools in each county. "If such high school already exists, and if the county board may be able to make such an arrangement with the trustees or board of education of said high school as will furnish to the pupils completing the rural school course free tuition in said high school, then said high school may be considered as meeting the purpose of this law without the establishment by the board of another high school. The county board of education in the various counties shall have full power and authority to unite with the governing authorities of any city or town in their respective counties for the purpose of establishing a high school for the joint use of the city or town and such county, and to unite with such authorities for the purpose of maintaining such high school if one be already in existence. For this purpose said county boards are hereby given full power and authority to make such contracts as they may deem necessary or proper for the establishment and maintenance of such high schools for the joint use of the county and such city or town. Said contract shall be in writing and shall contain full and complete stipulations as to employment and compensation of teachers, course of study, payment of expenses of the school and the control and discipline of the pupils."

Under the authority of this statute the county board of education of Ohio county and the trustees of the Hartford graded school, situated in Ohio county, in 1909 entered into a contract whereby in consideration of a stip-

ulated sum to be paid by the board of education to the Hartford graded school, graduates from the common schools of the county outside the boundary of the graded school district should be permitted to attend the graded school. This written contract was not renewed for another year, nor was any other written contract entered into between the parties for any of the years from 1910 to 1913, inclusive, although it appears that under some verbal agreement between the board of education and the trustees of the school, graduates from the common schools of the county were permitted to attend the graded school in each of these years, the board of education paying, or agreeing to pay, a stipulated amount to the graded school for this privilege.

On June 5, 1914, what purports to be a contract was entered into between the board of education and the trustees of the school in which it was stipulated that common school graduates should be admitted to the high school at a tuition fee of four dollars per month for each student. Some time after this the board of education refused to pay the tuition fee of certain pupils attending the graded school whose tuition the graded school insisted should be paid under the written contract as well as the verbal agreements made between these education authorities. Being unable to adjust the differences between them growing out of this dispute the graded school brought this suit against the board of education asking judgment against it for certain sums for tuition alleged to be due in 1913 and 1914. After the case had been prepared for trial and submitted for judgment the lower court dismissed the petition and the graded school trustees have brought the case here.

The statute under which contracts like the one involved in this case may be entered into expressly provides that such contracts shall be in writing and shall contain certain stipulations specified in the statute. In County Board of Education v. Dudley, 154 Ky. 426, it appears that a controversy came up between the county board of education of Hopkins county and the trustees of a common school located at Earlington, and in the course of the opinion the court said:

"It was the duty of the county board of education either to establish a high school of its own, or to provide one by contract with the governing authorities of an existing high school; but in case it should contract

for high school teaching, the contract should be in writing, and should contain full and complete stipulations as to employment and compensation of teachers, courses of study, payment of the expenses of the school and the control and discipline of the pupils. . . . .

"The resolution of the board did not constitute a contract, since it was unilateral only and did not bind the appellees to perform any service for the county board of education. Furthermore, it did not contain any provision whatever, either complete or cursory, as to the courses of study, payment of the expenses of the school, or the control and discipline of the pupils. . . .

"In the case at bar there was no written contract signed by either party, and that being true, appellees are not in a position to maintain an action. Mingo v. Trustees of Colored School District, 113 Ky. 475. It is a well established rule that one who contracts with a public officer acting under the authority of a statute, can contract only in the manner pointed out by the statute; otherwise he has no contract. City of Louisville v. Parsons, 150 Ky. 420."

Following the construction of the statute adopted by the court in that case, we again reiterate that no enforcible contract can be entered into between the board of education and the trustees of a graded school unless it is in writing and, furthermore, contains at least in substantial form the stipulations that the statute provides must form a part of these contracts. The purpose of the statute in requiring contracts like these to be put in writing was to avoid the discord and litigation detrimental to the educational interests of the county that might follow, as in this case, from differences of opinion between the board of education and the graded school trustees as to what the terms of the contract were. It is very easy for school authorities to enter into written contracts in accordance with the statute which will express the agreements that have been entered into between them, and when such a contract is reduced to writing and adopted by both parties acting in their official capacity, there is small opportunity for dispute to arise as to the terms and conditions of the contract.

In the case we have the contract of 1909—without expressing any opinion as to its statutory sufficiency—was by its terms to be in force only during that year. It was not adopted for any of the years 1910, 1911, 1912, 1913

or 1914 by the board of education or the graded school trustees acting in their official capacity, although it is fair to assume that under some verbal arrangements between the county superintendent of common schools and some of the trustees of the graded school for the years 1910, 1911, 1912 and 1913, it was agreed that common school graduates might attend the graded school for a consideration agreed upon. But these verbal agreements and arrangements, whatever they were or by whom made, were not enforcible by either party.

On June 5, 1914, what purports to be a contract under the statute was entered into for the year 1914 between the county superintendent of common schools as chairman and J. L. Brown, secretary of the county board of education of the one part, and J. H. B. Carson, chairman, and C. M. Barnett, secretary of the board of trustees of the graded school, of the other part, but it is clearly shown that this contract, inadequate on its face, was not authorized or adopted by the board of trustees of the graded school or the board of education acting in an official capacity. In other words, it was not the act and deed of either of these bodies.

The board of education can act only in its official capacity. It is made by the statute a body politic and corporate, and all of its acts and doings should be made a matter of record. The trustees of graded schools are likewise a body corporate and should keep a record of their proceedings, and neither of these bodies can speak otherwise than by their records. We do not mean to hold that it is indispensable that these records should be kept with all the exactness of detail that is observed in the records of organized business institutions, but only that there should be some record kept showing that the board of education or the trustees of the graded school, as the case may be, acting in an official capacity, took action in respect to the matter under investigation.

We agree with the lower court that no enforcible contract was in existence between these bodies during the years for which it sought to recover tuition fees, and therefore the judgment dismissing the petition is affirmed.