## Miles et al. v. Lee et al.

Oct. 8, 1940.

Churchill Humphrey, Judge.

40

Robert **T.** Burke, Robert **T.** Burke, Jr., and **Burke & Lawson** for appellants.

Arthur **R.** Smith, Jr., for intervenor, **F. V. Jones.**

Hal O. Williams, Lawrence S. Grauman, Robert **L.** Sloss, Leo **T.** Wilford, Bruce & Bullitt, J. Macauley **L.** Smith and Ogden, Galphin, Tarrant & Street for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

Bowman Field is an airport, comprising within its boundaries over 200 acres of land and situated approximately one-half mile east of the corporate limits of Louisville. It ,s operated by the Louisville and Jefferson County Air Board, a body politic created in accordance with the provisions of Section 938j-1, Kentucky Statutes. East of and separated from it by a county road, known as Cannon's Lane, are 100 acres appearing in this record as the Marshall property.

For several years the Air Board had contemplated purchasing the Marshall property in order to protect the present runways on Bowman Field and provide for the future extension of the airport's facilities. However, the Fiscal Court of Jefferson County was of the opinion that the price of $1,000 per acre asked by the owners was too high, and failed to make any provision for its purchase in levying taxes for the fiscal year 1940-1941. Subsequently the immediate acquisition of the Marshall property became desirable in order that it

might be leased to the United States Government for use in connection with the National Defense Program. For many years the army has maintained permanent hangars on the field and now proposes to construct on the additional acreage, if acquired and leased to the Government at a nominal rental, approximately one hundred buildings of temporary character, with sewerage and other facilities, for the housing of approximately two hundred officers and two thousand two hundred enlisted men during the present national emergency.

The one-half cent per one hundred dollars valuation of taxable property, levied as a tax by the Fiscal Court for the purposes of the Air Board for the fiscal year 1940-1941, being obviously insufficient to defray more than ordinary maintenance and operating expenses, the bankers of Louisville, in response to requests for assistance from members of the Air Board and other public bodies, and inspired no doubt by patriotic motives, offered through a committee of their clearing house association to advance the money necessary for the acquisition of the Marshall property without the Air Board or the Fiscal Court officially obligating themselves for its repayment, provided the banks could acquire a lien on the land purchased and be assured by the members of the Air Board and of the Fiscal Court that a sufficient tax would be levied during the ensuing year to enable the Board to discharge the lien.

On September 16, 1940, the interested parties "memorialized their intent," to use the language of the chancellor, in three letters, which, because they were adjudged to constitute the whole agreement, we shall set forth with minor omissions.

### (1)

"The Louisville Trust Co.
"Louisville, Ky.
"September 16, 1940

"Honorable Mark Beauchamp

"Chairman

"Fiscal Court, Jefferson County

"Louisville, Kentucky

"My Dear Judge Beauchamp:

"This is to inform you that all of the banks

constituting the Louisville Clearing House Associa-tion have agreed to participate in an advancement to cover the purchase price of 100 acres of land belonging to the Marshall Estate, which are to be acquired by the Louisville and Jefferson County Air Board by condemnation proceedings. It is contemplated that the amount fixed by condemnation will not exceed $100,000. * * *

"It is further contemplated that the following steps will be taken in connection with this advancement:

"(1) A judgment will be entered by the Jefferson Circuit Court in which will be a provision directing the Commissioner of the Court, in the preparation of the deed given to the Air Board, to reserve a lien against the property in favor of the Banks, each bank being named as the record-holder of a lien of equal dignity with the liens of all other banks to the extent of the interest of such bank in and to the entire lien interest.

"(2) The judgment should also contain a recital to the effect that the money to pay the judgment has, at tne request of the Air Board, been advanced by the banks named, and that pursuant to the agreement of the Air Board, the deed to be issued to the property by the Commissioner of the Court should contain a reservation of a lien in favor of the banks to the extent of the amount of money advanced by the banks.

"(3) The Air Board, pursuant to a resolution duly adopted, should execute and deliver to the banks an instrument reciting that the lien on the property was created in favor of the banks at the direction of the Air Board, and that the creation and reservation of that lien is confirmed by the Air Board.

"(4) The judgment, the deed and the instrument executed by the Air Board should each contain a provision showing the due date of payment of the money advanced, namely: July 2, 1941, and the right of foreclosure of the lien in the event of failure to pay the money.

"(5) The banks should be furnished with a

paper individually signed by each member of the Air Board to tne effect that they as members of the Air Board will on or before July 1, 1941, cause the Air Board to request the Jefferson County Fiscal Court to levy taxes in an amount sufficient, when received by the Air Board, to enable it to discharge the lien against the 100 acres of land, and further the members of the Air Board will individually agree that upon receipt of funds from the Jefferson County Fiscal Court by the Air Board, sufficient to discharge the lien, that they will cause to be promptly paid by the Air Board to the banks an amount equal to their respective interests.

"(6) The individual member of the Jefferson County Fiscal Court will furnish the interested banks with an agreement to the effect that they as individual members of the Court will vote to cause the Court, at the earliest possible date, according to law, to levy a tax for the benefit of the Louisville and Jefferson County Air Board, in an amount sufficient, when collected, to enable the Air Board to discharge the lien against the 100 acres of land. The individual members of the Fiscal Court will further agree that they will vote as members of the Fiscal Court to cause the Court on July 2, 1941, to pay an amount to the Air Board sufficient to enable the latter to discharge the lien to the banks, and that if it be necessary, in order to accomplish the payment of the lien, that the Jefferson County Fiscal Court borrow in anticipation of current taxes, in order to provide the funds for the Air Board, that they as individual members of the Jefferson County Fiscal Court will vote to cause the Court to borrow the funds. The agreement should further state that it is the purpose of each individual member of the Court, to the extent of his authority to do so, to see to it that the funds advanced by the banks for the purchase of the 100 acres of land are repaid to the banks on July 2, 1941.

"(7) The rate of interest to be borne by the lien to be five percent (5%) per annum until July 2, 1941, and six percent (6%) thereafter.

"Very truly yours,
"E. R. Muir
"President"

(2)

"Jefferson County Fiscal Court
"Louisville, Kentucky
"September 16, 1940

"To the Member Banks Constituting The Louisville Clearing House Association, Louisville, Kentucky.

"Gentlemen:

"There has been presented to the Fiscal Court by County Judge Mark Beauchamp, Chairman, a communication from E. R. Muir, President of the Louisville Trust Company dated September 16, 1940, with reference to the advancement to cover the purchase price of one hundred (100) acres of land belonging to the Marshall heirs, which will be acquired by the Louisville and Jefferson County Air Board, under condemnation proceedings, now pending in the Jefferson Circuit Court.

"The individual members of the Fiscal Court have carefully considered the said communication dated September 16, 1940 and concur in the steps being taken in connection with the advancement and the undersigned, as individuals, being members of the Jefferson County Fiscal Court, agree that they as individual members of the Court, will vote to cause the Court, at the earliest possible date, which is the fiscal year beginning July 1, 1941, provided for under the Kentucky Statutes, to levy a tax for the Louisville and Jefferson County Air Board, in an amount sufficient, when collected, to enable the Air Board to discharge the lien to be retained against the one hundred acres of land and further agree that they will vote for the adoption of a budget which will produce for the Louisville and Jefferson County Air Board an amount sufficient for the Louisville and Jefferson County Air Board to discharge the lien to be retained against said land and that if it be necessary, in order to accomplish the payment of the lien by said Air Board on July 2, 1941, the said Air Board will be legally authorized to borrow in anticipation of the current taxes, the amount necessary for the payment of said lien. They further state that it is the purpose of each individual member of the Court, to the extent of his

authority to do so, to see to it that the funds discharged by the banks for the purchase of the one hundred acres of land, are repaid to the banks on July 2, 1941, from the revenue which will be available to the Louisville and Jefferson County Air Board, as set out above.

"Respectfully,

"Mark Beauchamp, Chairman,
Fiscal Court

"Ben F. Ewing, Member,
Fiscal Court

"Robert A. Fihe, Member,
Fiscal Court

"James W. Henning, Member,
Fiscal Court"

## (3)

"Louisville and Jefferson County Air Board
"Louisville, Ky.

"September 16, 1940

"To Member Banks Constituting
The Clearing House Association
Louisville, Ky.

"Gentlemen:

"There has been presented to the members of the Louisville and Jefferson County Air Board by Roger E. Schupp, Secretary and Treasurer, a communication from E. R. Muir, president of the Louisville Trust Company, dated September 16, 1940 with reference to the advance to cover the purchase price of one hundred (100) acres of land belonging to the Marshall heirs which will be acquired by this Board under condemnation proceedings now in the Jefferson County Circuit Court.

"The individual members of the Air Board have carefully considered the said communication dated September 16, 1940 and as individuals, being members of the Louisville and Jefferson County Air Board, agreed that they, as individual members, will vote to cause the Board, on or before July 1, 1941, to request the Jefferson County Fiscal Court to levy taxes in an amount sufficient, when received

by the Air Board, to enable it to discharge the lien against the one hundred acres of land, and further the members of the Air Board will individually agree, if it be necessary, in order to accomplish the payment of the lien, that they as individuals will vote to borrow legally in anticipation of current taxes in order to provide such funds and further the members of the Board individually agree that upon receipt of such funds to cause the loan to be promptly paid to the banks to discharge the lien.

"Respectfully,

"A. W. Lee
"David W. Fairleigh
"E. R. Dumesnil
"L. S. Vance
"Louis Seelbach"

At or about the time these letters were written, a condemnation suit to acquire title to the Marshall property was filed on behalf of the Air Board, and while the condemnation suit was pending the present action was instituted by appellants.

In their petition they set forth the amount of the current revenue of the Air Board and their version of the proposed financing plan and attacked the latter upon the ground that under the provisions of Sections 938j-5, 938j-6, Kentucky Statutes, the Air Board is prohibited from borrowing, except in anticipation of its revenue for the fiscal year in which the loan is made, and from mortgaging real estate. They further alleged that the Fiscal Court was undertaking to "lend its credit" by incurring the obligation referred to, although it was without legal right to do so, and that the Fiscal Court proposed to close Cannon's Lane.

In the concluding numerical paragraph of their petition, the appellants alleged that the principal residential growth of Louisville was in the general direction of Bowman Field and beyond and:

"That in the early days of aviation the establishment and use of Bowman Field as an airport was of little significance except as an experimentation, but the growth of aviation and the increasing number of planes using it as a municipal airport has made it objectionable in the neighborhood in which

it is located and it is to the best interest of the people living in that vicinity as well as to the best interest of the City of Louisville and Jefferson County that instead of enlarging the present municipal airport it be relocated on some one of the other available sites where railroad and sewer facilities can be obtained and which will enhance the neighboring property values instead of destroying them.

"That the present airport is mainly located in Seneca Park, a public park in the City of Louisville, the title to which is in the Board of Park Commissioners of the City of Louisville. That Bowman Field is located about one-half mile outside of the City limits of the City of Louisville, on the Taylorsville Road and that the territory between Bowman Field and the City of Louisville is thickly populated and built up except that part embraced in Seneca Park and the residents of this section have invested many thousands of dollars in improving their property as residences and the territory immediately surrounding Bowman Field embraces such communities as St. Matthews, Buechel and many towns and subdivisions. That any enlargement of said airport will not only seriously interfere with the growth of the City of Louisville in this its best direction, but will damage and destroy property values in these communities as well as the whole Highlands Section of the City of Louisville.

"That there are a number of incorporated municipalities of the 6th class in the immediate vicinity of Bowman Field whose citizens, together with other residents surrounding the airport, are to all intents and purposes residents of the City of Louisville and that the whole Highlands Section of the City of Louisville which is in close proximity to said airport will be adversely affected by such enlargement and use.

"That the present arrivals and departures of merely commercial aeroplanes (about seven arrivals and seven departures a day) are objectionable but that the arrival and departure of bombardment planes in squadrons and the enlargement of said airport and its use as a bombardment training base will seriously interfere with the peace of the many

thousands of people living within this area and will seriously and materially impair and destroy the values of their properties and homes,

"That upon pressure of objection upon the trustees of the various sixth class towns of the citizens thereof, the Chairman of their respective Boards of Trustees appointed representatives to attend a joint meeting which was also attended by persons from the unincorporated areas surrounding Bowman Field and from the City of Louisville, which meeting in addition to adopting resolutions selected a permanent committee composed of the Chairman of the joint meeting, one member each from five of the cities represented at the meeting and one member from the city and county at large to study the situation and pursue such course of action as in their judgment would best prevent the said enlargement and use of Bowman Field as a bombardment unit.

"That the plaintiffs herein are the members of that committee, that each is a citizen, resident and taxpayer of Jefferson County, Kentucky, and each owns his own home within the immediate vicinity of Bowman Field as herein set out.

"That the questions involved in this action are of a common and general interest of many thousands of persons so numerous that it is impracticable to bring all of them before the court within a reasonable time or to join them herein as plaintiffs and that the plaintiffs herein should be allowed to sue for the benefit of all.

"That the plaintiffs and all the residents within the vicinity of Bowman Field are in favor of preparing this country for defense against any outside attacks, but since there are several other available sites which can be gotten ready before any use can be made of them, and as soon or sooner than Bowman Field can be made ready, the selection of another location for an airport for a bombardment unit would give us two good airports instead of one should it ever be necessary to actually defend this country.

"That the premises considered, plaintiffs are entitled to the relief demanded which consists of en-

joining the defendants, Louisville & Jefferson County Air Board and the Fiscal Court of Jefferson County, Kentucky, and the defendant banks, from the commission of the acts herein set out which would produce great and irreparable injury to the plaintiffs and other thousands of citizens in the vicinity of Bowman Field."

By answer and counterclaim, the appellees traversed the material allegations of the petition and set forth the pendency of the condemnation suit, the urgent need of acquiring the Marshall land, and that it was contemplated that the Fiscal Court would include in its tax levy for the fiscal year beginning July 1, 1941, a sufficient levy to repay the purchase price advanced by the banks. Coupled with these allegations were the express statements that "neither the Louisville & Jefferson County Air Board nor the Fiscal Court of Jefferson County will incur any personal obligation to pay such purchase price, or any part thereof" and that "if a sufficient levy is made by the Fiscal Court of Jefferson County to raise funds with which to pay such purchase price during the fiscal year beginning July 1, 1941, it is contemplated that the Louisville & Jefferson County Air Board will borrow money in anticipation of its revenues for such fiscal year with which to repay the purchase price of such property in order to protect it from the enforcement of the lien to be given the defendant banks to secure them against the advancement of the purchase price for such real estate."

By a third paragraph the appellees alleged that a controversy existed between them and the appellants as to whether:

"(a) Louisville & Jefferson County Air Board may create a lien on the property being condemned as heretofore set out to secure moneys advanced by the defendant banks for the payment of such award, if any, may be made in such condemnation proceeding; and

"(b) Whether the Fiscal Court of Jefferson County may, if it so desires, levy a tax for the fiscal year beginning July 1, 1941, not to exceed 3% per $100 of assessed valuation of property in Jefferson County subject to levy for tax purposes in order to provide Louisville & Jefferson Air Board with

funds during the fiscal year from July 1, 1941 to June 30, 1942, with which said Louisville & Jefferson County Air Board may, if it so desires, repay to the defendant banks moneys advanced by the said banks as aforesaid and by such payment relieve the property hereinabove referred to from the lien created as aforesaid.''

And they prayed that the petition be dismissed and for a declaration of rights.

By a reply appellants alleged that certain writings had been executed relating to the financing plan under consideration, which writings appellees were called upon to produce, and that a controversy, stated in somewhat different terms from those employed by appellees in their answer and counterclaim, existed between the parties, which appellants desired the court to determine.

During a pre-trial conference, called shortly after institution of the suit, the chancellor determined the issues to be tried and limited the number of witnesses to be introduced. During the oral hearing of testimony, which was begun on the ensuing day, the chancellor announced that he would take judicial notice that the principal residential growth of the city was in the direction of Bowman Field, that the entire development of passenger, express and mail transportation has occurred subsequent to the establishment of the field, that it has no railroad or sewer facilities, that it is located in an area that is residential in character and that the density of the residential population is increasing rapidly. He also ruled, and we think correctly in view of the powers conferred upon the Air Board by Section 938j-1, Kentucky Statutes, that since the petition contained no allegation that the Board had abused its discretion, he would permit no inquiry as to the wisdom or propriety of its action in extending the boundaries of the field by the acquisition of the Marshall property, but would confine the inquiry to the Board's right to acquire it by the means contemplated. Hence he declined to permit the introduction of any testimony pertaining to the availability or desirability of other sites for airport operations or extensions, or opinion evidence as to the adverse effect which the enlargement of Bowman Field would have upon the surrounding property.

Accordingly the admitted evidence, in addition to

the testimony given by members of the Air Board, members of the Fiscal Court and the bank officers relating to the financing plan set forth in the quoted letters and the reasons for its adoption, consisted of that given by Major R. L. Williamson of the U. S. Army and Albert H. Near, the superintendent of Bowman Field.

Major Williamson testified that the addition to the present field would be used by the Government for the purposes previously stated in this opinion, that the army unit which would be housed there was not a training unit but a tactical or combat unit, that no bombs would be stored on the property, that no money had been appropriated for the construction of runways, that the use of the field by the army probably would not extend beyond the duration of the present emergency, but that, because the army was prohibited from erecting buildings on land leased for a shorter period than twenty-five years, the government would require a twenty-five year lease at a nominal rental of $1 per year.

The material portions of Mr. Near's testimony, assuming that any testimony as to the desirability of acquiring the Marshall property was competent, consisted of his answers to the following questions:

"Q. Lieutenant, is it absolutely necessary in the management and conduct of Bowman Field for the hundred acres involved in this condemnation suit to be acquired? A. We have been negotiating for this land for over two years. It has been a necessity from the standpoint of the field to protect the runways we have there now on this land and see to it that nothing is built on it and to take care of future extension. * * *

"Q. Irrespective of any question of national emergency at this time if there wasn't an emergency the Louisville & Jefferson County Air Board still wants this additional ground, do they not? A. Definitely."

The judgment entered by the chancellor at the conclusion of the testimony, in addition to dismissing the petition and adjudging the existence of a controversy, so completely negatived appellants' conception of the effect of the financing plan adopted that we shall set forth the declaration of rights therein contained:

"(a) Louisville and Jefferson County Air Board may acquire the One Hundred (100) Acre Tract of land described in the resolution set out in paragraph numbered (1) of the plaintiffs' petition here, subject to a lien in favor of the defendant Banks to secure the repayment to them of the amount of the condemnation award to be paid by the Banks, together with interest thereon, provided that there will be created no debt or obligation on the part of Louisville and Jefferson County Air Board to repay to the Banks, or any of them, any part of the condemnation award by them paid into court, and provided further that there be created no obligation upon the part of the Jefferson County Fiscal Court to levy, for the Louisville and Jefferson County Air Board, for any fiscal year subsequent to the current fiscal year, any tax whatsoever;

"(b) The Jefferson County Fiscal Court may, if it so desires, levy a tax for the fiscal year beginning July 1, 1941, not to exceed 3 cents on each $100 of assessed valuation of property in Jefferson County subject to levy for tax purposes in order to provide Louisville and Jefferson County Air Board with funds during the fiscal year beginning July 1, 1941, with which said Louisville and Jefferson County Air Board may, if it so desires, repay to the defendant Banks the amount of said condemnation award advanced by said Banks, together with interest thereon, and by such payment relieve the property hereinabove referred to from the lien created as aforesaid;

"(c) The three (3) letters introduced in evidence through the witness Fairleigh, which, the Court determines, together constitute the sole and whole agreement, arrangement and plan for the advance and payment into court by the Banks of the condemnation award and for the security for the repayment thereof, do not: (1) create a debt or obligation on the part of Louisville and Jefferson County Air Board to repay to the Banks, or any of them, any part of the condemnation award by them paid into court, or (2) create an obligation upon the part of the Jefferson County Fiscal Court to levy, for the Louisville and Jefferson County Air Board, for

any fiscal year subsequent to the current fiscal year, any tax whatsoever; and

"(d) If the defendant Banks advance the purchase price awarded to the defendants in the condemnation suit, such Banks will have a lien upon the land to secure the repayment of such purchase price and interest thereon, and the Air Board will acquire such property subject to the lien of the Banks to secure the repayment of the sum so advanced, together with interest thereon, and the Banks may at any time after the maturity of such lien enforce it by a judicial sale of the property.

"(e) Provided nothing herein contained shall be construed as a regulation of the procedure in case 266014-Jefferson Circuit Court, Common Pleas, Third Division, or a determination of any right or rights therein to be adjudicated."

As we understand them, the arguments of appellants' counsel that the financing plan adopted is illegal may be summarized as follows:

1. The statute conferring the power of eminent domain upon the Air Board, and directing the procedure, contemplates that the condemnor has the money to pay for the property, and by implication prohibits the payment by a volunteer, or the creation of a lien upon the property.

2. The Air Board is without power to mortgage or otherwise create a lien on the property to be acquired, since Section 938j-6, Kentucky Statutes, relating to the title to property acquired by the Air Board, and its use, confers no such authority.

3. The Air Board, to all intents and purposes, has borrowed the money to acquire the Marshall property and agreed to repay it out of next year's revenue, thus violating Section 938j-5, Kentucky Statutes, and Section 157 of the state constitution.

4. The plan adopted constitutes a loan of the county's credit, in violation of Section 179 of the constitution.

5. The national banks are prohibited by federal statutes from loaning money upon real estate security, and the state banks participating in the transaction are

prohibited by the Kentucky Statutes from making the type of loan involved.

We shall briefly discuss these contentions in the order named.

1.  The first contention is predicated upon the fact that Section 938j-7, Kentucky Statutes, which confers the power of eminent domain upon the Air Board, directs that the proceedings shall conform to the procedure prescribed by Section 2852, Kentucky Statutes, relating to the condemnation of property for park purposes, which in turn directs that the judgment shall "take effect upon the payment into the court by *said* [Park]*board of* the amount of money named in the verdict."

We can not construe the words which we have italicized as conveying any mandatory meaning, since they neither add to nor subtract from the only conceivable object sought to be accomplished by the Legislature, namely, the protection of the rights of the property owner and the prompt payment to him of the amount awarded. Clearly we would not be justified in inferring from the use of superfluous words a legislative intent not apparent.

2.  It may be conceded that the Air Board is without authority to mortgage or otherwise encumber property after it has been acquired and paid for, but neither the Statutes nor any provision of the Constitution forbids the acquisition by a body politic of property encumbered by a lien to secure the payment of the purchase price, where no liability for the payment thereof is assumed or contracted by the vendee. That a lien to secure the banks was to be retained at the direction of the Air Board is wholly immaterial, in view of the provisions of the judgment, that the payment of the purchase money by the banks would entitle them to a lien and that the execution of the financing plan, outlined in the letters quoted, would not create a debt or obligation on the part of the Air Board to repay to the banks any part of the condemnation award paid by them into court or create an obligation upon the Fiscal Court to levy for the benefit of the Air Board any tax whatsoever.

3.  The considerations outlined above are applicable to and equally efficacious in disposing of the conten-

tion that the financing plan adopted constitutes a borrowing of money by the Air Board and an obligation on its part to repay it out of revenues of the ensuing fiscal year in violation of Section 938j-5, Kentucky Statutes, and Section 157 of the Constitution. Admitting that neither the Air Board nor the Fiscal Court formally obligated itself, appellants' counsel nevertheless argues that the execution by the Air Board of a twenty-five year lease to the Government will bind that body to pay for the land and subject it to a claim by the Government if it does not.

Section 938j-6, Kentucky Statutes, expressly authorizes the Board "to provide an airport and incidentals thereto for the use of the government of the United States when required by said government in the discharge of its public duties" and "to contract with said government of the United States and with any state government for use by said governments respectively of the facilities to be established by said board under the authority of this act."

Moreover, appellants' counsel overlook or ignore the fact that the terms of the lease, as far as the record shows, have not been agreed upon and that the rights acquired under a subsequently executed lease would necessarily be subordinate to the lien retained in favor of the banks. The presumption that the Air Board will protect itself from such liability by proper reservations in any lease it may execute is at least as strong as the presumption that it will not do so.

We can not decide this case on the intentions of the members of the Board or their individual commitments, or upon the possibility that the Board as an official body may hereafter violate some provision of the law. The fact remains that the financing plan adopted and in this action attacked does not create a present indebtedness on the part of the Air Board to be paid out of future revenue in violation of either the Constitution or the Statutes. It was so adjudged by the chancellor, and that judgment is binding upon the banks which have agreed to advance the money. Upon what possible theory could they or their privies assert that they possess or seek to enforce an obligation of the Air Board or the county in the face of a judgment, rendered in an action to which they were parties and in which they

sought a declaration of their rights, that no such obligation in fact existed?

4. Section 179 of the Constitution prohibits the Legislature from authorizing any county or municipality to loan its credit, other than for the purpose of constructing and maintaining bridges and roads. It is sufficient to say that no authority has been cited by appellants' counsel suggesting the applicability of this section of the Constitution to the question under consideration and that we can perceive no such applicability.

5. Nor are we able to perceive how appellants' rights are affected by the alleged existence of statutory or other prohibitions which might be invoked by stockholders or governmental agencies to prevent the participating banks from advancing funds upon the security of a real estate lien. It is strenuously argued by appellants' counsel that since the banks were parties to this litigation and sought a declaration of rights, we should determine the limitations upon their power to make loans upon the security which they have signified their willingness to accept. But this argument overlooks the fact that a controversy, in order to be judicially determined, must exist between the parties having a direct interest in the subject matter of the controversy and that the appellants have no direct interest in the question of whether or not the acts of the banks disclosed by this record are ultra vires. In fact, no controversy exists between the appellants and the banks as to the latter's charter or statutory powers and certainly no such controversy exists among the banks.

We would not have the conclusions herein expressed construed as a departure from our frequently expressed view that Section 157 of the Constitution should be strictly interpreted so as to make effective the obvious and salutary purposes sought to be accomplished by framers of that instrument. Nor have we been swayed in arriving at this conclusion by the peril which our country faces and the need pressing upon each individual citizen to prepare to meet it. Nor have we taken into consideration the fact that from a practical standpoint no violence is done to the county's finances, since the Fiscal Court by increasing the tax rate from forty to forty-two and one-half cents for the ensuing fiscal year or by levying an additional two and one-half cent

58

tax for the current year could within constitutional limitations provide the Air Board with the $81,316.66 and interest necessary to discharge the lien should the Air Board elect to discharge it and request the levy. As said by the chancellor, "from the point of view of reason, * * * the Air Board acquires by this arrangement an option to purchase on July 2, 1941, the hundred acre Marshall tract at the price determined by the condemnation award" and there is "no reason in the world why the Air Board can not take an option to be exercised next year if it chooses to do so."

Neither have we overlooked the fact that the use to which the additional acreage will be put during the emergency may be annoying to the residents of the vicinity and even retard the residential development of the city in that direction. But, as said by the chancellor, the appellants do not charge, nor could they charge under the facts existing, the maintenance or creation of a nuisance or seek an injunction to abate or prohibit it, and ample authority could be cited supporting the correctness of the chancellor's ruling that since the Legislature has vested in the Air Board the power to locate, operate and extend the airport, the court, in the absence of an allegation that the Air Board has abused its discretion, is without power to enjoin the acquisition of the Marshall tract or to direct the location of an additional airport elsewhere.

Judgment affirmed.