# State Bank & Trust Co. of Richmond v. Madison County et al.

(Decided Nov. 22, 1938.)

502

JOHN B. BAYER, JR., for appellant.

JOHN NOLAND, OWEN H. HISLE and GEORGE T. ROSS for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

This suit was brought under the Declaratory Judgment Act, sections 639a-1 to 639a-12 inclusive, of the Civil Code of Practice, to test the legality of the proposed plans for financing the erection and equipping and the operation of a hospital in Richmond, Madison county. The suit was filed by the county of Madison and the Pattie A. Clay Infirmary Association against the State Bank & Trust Company of Richmond, Trustee of Carrolie Walker Hanna Trust Fund, to determine whether the purchase of the proposed bonds by the bank as trustee would be valid. The bank's general demurrer to the petition was overruled, and it declining to plead further, the court adjudged that the proposed plans for financing and operating the hospital complied with the statutes. From this judgment appellant appeals.

This suit involves a somewhat different arrangement than is usually found for setting up a plan under which a grant may be received from the Federal Public Works Administration for financing in part a public works undertaking where it is necessary to borrow

money to finance the remainder of the undertaking. We have here a situation where the property of a private hospital corporation has been deeded to the fiscal court of Madison county, which in turn has leased the property back to the corporation. The corporation is to manage and operate the hospital as operating agent for the county. The usual arrangement for financing similar undertakings is discussed in Booth v. City of Owensboro, 274 Ky. 325, 118 S. W. (2d) 684, whereby the public agency deeds property to a private corporation which in turn leases it back to the public agency during the period when bonds are being retired. Such plans have been devised to get around constitutional debt limitations by keeping the obligations from being those of the municipal corporations themselves.

The Pattie A. Clay Infirmary Association was organized for the purpose of accepting certain property in the city of Richmond from Brutus J. Clay for the operation of a hospital. The deed from Clay to the Association, made in 1892, set out that he desired to erect a monument to the memory of his wife, Pattie A. Clay, which would be "more enduring than marble." In brief, the deed set forth that (1) the membership of the Association was to be continued under a certain plan; (2) the Association was to raise an endowment fund the income from which was to be used in support of the hospital; (3) the Association was to pay all taxes and keep all buildings fully insured, and, in case of injury by fire or otherwise, to use the insurance money to erect new buildings; (4) the hospital was to be known and forever called the Pattie A. Clay Infirmary, and the Association was to place a memorial tablet in front of the main entrance setting forth that inscription; (5) the board of directors of the Association was empowered to sell the original property after the expiration of 25 years, but the proceeds from the sale were to be reinvested in other real estate to be held on conditions and limitations applying to the property originally conveyed by Clay; (6) the Association was prohibited from mortgaging or placing any lien on the real estate and the property conveyed; and (7) in case the Association failed to carry out the conditions set out in the deed, or permitted the hospital to be used for purposes other than those set forth in the deed, the property was to revert to the first party or his heirs at law, and the endowment fund that might be on hand in the event of such

happening was to be disposed of in such charitable ways as the board of directors might determine, unless otherwise required by the donors of subscriptions.

The deed from the Infirmary Association to Madison county set out that the Association had been operating the hospital under the Brutus J. Clay deed of 1892, and that the buildings on the property were old and out of date and unfit for use for hospital purposes; and that (1) the Infirmary Association had no means or method by which it could secure funds sufficient to raze the old building, and erect in its place an adequate and suitable building for hospital purposes; (2) Madison county would carry out the requirements and purposes of the Clay deed to the Infirmary Association relative to the hospital property; (3) the county proposed to·construct new buildings upon the property conveyed, under plans and specifications made by an architect employed by the county, and as provided for in a grant from the United States government not to exceed $70,363, representing 45% of the proposed cost of constructing and equipping the hospital; (4) the fiscal court of Madison county would issue its bonds or special obligations in an amount to pay the remaining 55% of the amount necessary for constructing and equipping the hospital; said bonds to be due and payable over a period of 20 years in annual principal and interest installments, to be fixed by the bond issue; and (5) in the event the county should at any time cease to use the property for hospital purposes, or allow same to be discontinued as an "Infirmary," or allow the property to be used for any other purpose, it should revert to the heirs at law of Brutus J. Clay.

The lease between Madison county through its fiscal court, and the Pattie A. Clay Infirmary Association, after setting forth the principal provisions in the Clay deed to the Association, and also those in the deed of the Association to Madison county, provides that (1) the hospital property is to be leased to the Association for a period of 21 years, with the option to renew the lease for further terms of 21 years; (2) the rentals are to be paid into a special sinking fund by the Association to retire the county's bonded indebtedness for the construction and equipment of the hospital; the depository for the fund to be designated by the fiscal court; and (3) in the event the Association fails to keep the hospital open, or to comply with any of the provisions

of the lease, the county, acting separately, or in conjunction with the trustee named and designated in the bonds to be issued, may designate a receiver to keep the hospital open and operate it as a public hospital in order to comply with the provisions of the lease, and in order to collect and pay the annual rentals into the bond and interest fund for the liquidation and retirement of the bonded indebtedness.

We have carefully examined the arrangements worked out for providing improved hospital facilities for Madison county, and it is our conclusion that the plans, as set forth above, do not violate the spirit and purpose of the Brutus J. Clay deed of 1892 to the Infirmary Association. Actually, the arrangements should make possible greatly improved and extended hospital facilities for the county, as well as the expansion of the original purpose of Brutus J. Clay in establishing a memorial "more enduring than marble" to the memory of his wife, Pattie A. Clay. Trustees of Madison Academy v. Board of Education of Richmond, 26 S. W. 187, 16 Ky. Law Rep. 51. Furthermore, it is our conclusion, for reasons discussed below, that the other provisions of the Clay deed to the Infirmary Association are not violated in any substantial manner.

We have before us the question as to whether the plan for leasing the hospital by the hospital corporation from the county, as referred to above, violates section 938e-5 of the statutes. This section is as follows:

"Said county hospital, when erected, shall be at all times under the control of the proper county authorities, and said hospital is authorized to provide for the instruction and training of nurses, and to issue diplomas for such pupils who have completed courses as prescribed by the rules and regulations to be adopted in connection therewith. The fees to be charged patients for attention given and such other fees or charges as may be demanded, shall be fixed, regulated and controlled by the governing authorities of said hospital, and shall be applied to the maintenance fund of said hospital."

Under the plans presented in this case the fiscal court of Madison county is vested with the control of the hospital, and it determines, regulates and controls the fees to be charged. Furthermore, it is to be noted that all of the contracts and arrangements for the construction and

equipment of the new hospital have been, or are to be, carried out in the name of Madison county. The Infirmary Association, under the lease, is the operating agent for the county in conducting the hospital. This leasing arrangement is not in violation of section 938e-5, supra, and it does not represent a partnership arrangement such as was discussed in the Booth Case, supra. When we consider section 1840 of the statutes, as discussed in Robinson v. Mercer Fiscal Court, 218 Ky. 452, 291 S. W. 721, and the Booth Case, supra, we see that a county has broad powers in providing hospital facilities for the sick and poor. In the leasing arrangement between the Infirmary Association and Madison county we find no such delegation of powers to the Infirmary Association by the fiscal court as would violate the rule that a public body may not delegate the exercise of discretion as to what the law shall be. Spahn v. Stewart, 268 Ky. 97, 116, 103 S. W. (2d) 651. It was pointed out in the Spahn Case, however, that a public body may confer discretion in the administration of a law itself. Therefore, we find no objection to the plan for operating the hospital as provided in the lease between Madison county and the Pattie A. Clay Infirmary Association.

While the bonds to finance the part of the proposed construction and equipment costs of the hospital, not covered by the grant from the Public Works Administration, are to be issued by the fiscal court of Madison county as the owner of the hospital and not by the Infirmary Association, the lessee, they are not such bonds as represent a charge upon the tax funds of the county, nor do they represent a charge against the hospital realty. The bond form provides that the bonds are payable solely from and by an exclusive pledge and lien on a fixed amount of the gross income and revenue to be received by the county from the leasing of the hospital properties, including additions thereto. We have noted that the rentals paid by the hospital association are to be paid into a separate fund, to be known as the Pattie A. Clay Infirmary Association Building Bond and Interest Redemption Fund. The bond form expressly provides that the bonds do not constitute an indebtedness of Madison county within the meaning of any constitutional debt limitation. The lien against the hospital goes only to the value of its use as fixed by the rental agreement between Madison county and the Infirmary Association, and there is no method provided

under which the hospital or any of its property may be sold under foreclosure in order to obtain means with which to pay the bonds, nor is there any lien or obligation against the tax monies of Madison county. This plan for retiring the bonds does not, in our opinion, constitute a violation of the provision of the Brutus J. Clay deed to the Infirmary Association forbidding the mortgaging of the hospital property, nor does it represent such an obligation of Madison county as would come within the class of indebtedness limited by the Constitution, sections 157 and 158. Furthermore, the plan does not contemplate such a debt obligation as is required to be submitted to the voters under section 938e-2 of the statutes. See Combs v. Center, 234 Ky. 364, 28 S. W. (2d) 37.

The broad and extensive powers given a county under sections 1840 and 938e-1 of the statutes to provide hospital facilities for the use of its citizens, a service vital and necessary to the well-being of a community, presents a situation wherein we have no hesitancy here in following the reasoning presented in Reconstruction Finance Corporation v. City of Richmond, 249 Ky. 787, 61 S. W. (2d) 631; the effect of which would authorize the fiscal court of Madison county to select the means of providing for the retirement of the bonds issued against the rentals to be received by it from the operation of the hospital by the Infirmary Association. In this connection, we have seen that no charge is to be placed upon the tax monies of Madison county under the financing plan before us. See Spahn v. Stewart, supra; Klein v. City of Louisville, 224 Ky. 624, 6 S. W. (2d) 1104; Bloxton v. State Highway Commission, 225 Ky. 324, 8 S. W. (2d) 392.

It is our conclusion, therefore, that the judgment of the lower court should be, and it is, affirmed.