## Cawood v. Coleman, Mayor, et al.

June 25, 1943.

860

S. H. Brown for appellant.

Marion Rider and Clifford E. Smith for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

This is an appeal from a judgment of the Franklin circuit court dismissing the petition of appellant, a citizen and taxpayer of Frankfort, suing on his behalf and persons similarly situated. Demurrer was sustained, and upon refusal to plead further petition was dismissed. Petitioner sought to enjoin appellees from carrying into effect ordinances providing for the purchase of the capital stock of Tri Cities Utilities, thereby acquiring the physical properties of the Frankfort Water and Electric system, creating an agency to operate the system, and issuing bonds for payment.

As gathered from pleadings and briefs we find that Associated Electric Company owns the capital stock of Tri City Company, which is operator of the combined "Frankfort properties," the unified light, power and water systems. The Associated G. and E. Company is the holding company of Associated Electric, Ky-Tenn Light and Power Company, and other utilities. Tri City is successor to Ky-Tenn Power Company, formerly owning the Frankfort properties. The Associated G. and E. Company is now and has been for several years going through receivership in the New York court, and in this process the properties of Ky-Tenn, and its successor Tri City have been ordered sold or liquidated, and if the city becomes the owner of its stock Tri City will at once be dissolved.

In the contract for purchase, the Associated Electric Company is to indemnify the city against liability or obligation other than such as are assumed by the sale contract. The contract of sale was entered into between the city and owners June 4, and approved by the city officials. There is no criticism aimed toward the contract, either as to form or substance, which calls for a payment for the combined properties of $1,200,000. It is history that long prior to the passage of the ordinances the city, through its officers and a committee of citizens, appointed for the purpose, carried on negotiations looking to the purchase of the electric system. This plan failed because the owners of the combined system refused to consider an offer on the one unit. It appears that the proposed purchase of the stock of the unified system in the city will result in a considerable saving over what might have been demanded or paid if it had undertaken, or the seller had agreed to split the unit and make separate sales.

For many years, and since the water plant was sold, the two have been operated as a single system, having the same manager, same office and equipment manned by the same personnel, supplying customers with both commodities, and appellant and all consumers have paid their monthly bills to one collector. It may also be noted, if it has bearing, that both the contract and the ordinances in question, were given wide publicity in the local newspapers, with the result that no complaint has been registered except the present one, which does not question the propriety of the contract or the fact that the acquisition of the properties will redound to the benefit of the citizens. The sole objections presented are of legal nature, and may be evidenced by the objections of appellant advanced in the circuit court and reiterated here.

It was and is argued (1) that the city is limited in method of purchase by what is commonly called the T. V. A. Act, Ch. 18, Acts of 1942, with respect to acquiring by purchase operating electric systems, KRS 96.550, et seq., (2) limited in respect of acquisition and operation of a water system by KRS 96.350 et seq. (3) That sec. 179 of the Constitution prohibits the city from acquiring the combined capital stock of Tri City, even though it may be purposed to dissolve that corporation. (4) That the city does not under its general charter, possess the

right to issue and sell revenue bonds, even though the principal and interest be payable solely from operating revenues. (5) The issuance and sale of bonds will constitute an indebtedness against the city in violation of secs. 157, 158 of the Constitution, and (6) that the delegation of power to manage and control by an appointed board is invalid.

Applying the process of elimination in order to reach what appears to be the chief controversial question, (1 and 2), we shall dispose of others. (3) Section 179 of the Constitution prohibits the General Assembly from giving authority to a municipality to become a stockholder in any corporation. The purchase of the Tri City stock will merely be the means of vesting the title to the Frankfort properties, whereupon the corporation will be contemporaneously dissolved. The objection is answered in Maysville & L. T. R. Co. v. Wiggins, 104 Ky. 540, 47 S. W. 434, and Long v. Mayo, 271 Ky. 192, 111 S. W. (2d) 633. (5 and 4) The bonds are to mature in 25 years; to bear not to exceed 3 per cent interest; only the revenues from operation of the properties are in lien for interest and liquidations. By adopting this plan the city has avoided the creation of a lien, as is provided by 96.400, 96.410, KRS, which create a statutory lien against the physical property.

We see no reason why this provision, if applicable here, should not be waived by contracting parties. Purchasers of the bonds will be bound by the terms and conditions of the bond contract. If appellees are correct in their contention that general statutes later referred to authorize the city to purchase and operate, it would follow that the city has authority to provide means and method of acquisition. Reconstruction Finance Corp. v. Richmond, 249 Ky. 787, 61 S. W. (2d) 631, reaffirmed in State Bank & Trust Co. v. Madison County, 275 Ky. 501, 122 S. W. (2d) 99. As having bearing, but not decisive, see Olson v. Preston Street Road Water Dist. No. 1, 286 Ky. 66, 149 S. W. (2d) 766; Long v. Mayo, supra; Spahn v. Stewart, 268 Ky. 97, 103 S. W. (2d) 651; Webster v. City of Frankfort Housing Comm., 293 Ky. 114, 168 S. W. (2d) 344. These are conclusive of the contention that secs. 157 or 158 are violated.

(6) One ordinance created an "Electric and Water Plant Board of the City of Frankfort," to consist of five resident taxpayers and users of electric energy and

water, possessing qualifications of council members, with no salary attached. It provided for secretary and treasurer of the board, the latter, as well as board members, to execute bonds, a plant manager and other necessary employees, with salutary limitations as to persons employed. The duties of the members and manager are fully set out, including specific duties of the board with respect of handling funds. KRS 96.320 provides for the appointment of a Water Works Commission by the Mayor, and defines duties. KRS 96.530 provides for the appointment by the council (ordinance) for a city utility commission of three members, and defines duties. KRS 94.070 (2) provides for the establishment of a board of public works, three freeholders to be selected by the Mayor. KRS 94.110 gives this board control of water and electric power plants, except as provided by KRS 96.530. KRS 96.740 provides for electric power board.

These provisions present a striking example of the impracticability if not impossibility of compliance with all statutes under which appellant contends the maintenance and operation of the system should be conducted. The plan of control and management proposed seems a sensible and practical combination of the various provisions of the statutes referred to above, and comports with KRS 96.740. A change in plans would require nothing more than action by the council.

(1 and 2) are approached with the realization that insofar as is evidenced by pleadings, briefs of counsel for appellant, and amicus curiae, and oral argument, there is no charge of ulterior motive or attempt to foist upon the public of Frankfort a white elephant, or in anywise involve the citizens in an enterprise which may result disastrously, or which under proposed plans may not be successfully carried out. Neither is it intimated that the plan of unifying the two projects was for the purpose of attempting to evade in any way the provisions of the statutes, supra. This is true because of the admitted fact, and which may be said to be known to members of the court, that the combined ownership and operation was in effect long prior to enactments.

As we read the contract and ordinances, it seems to us they substantially comply with the statutes said to control (with improvement in some instances) in respect to the purchase, except as is provided for submission of proposal of purchase of the water system, KRS

96.360, and the same question, with the additional query as to issuance of bonds, in purchase of electric plants, KRS 96.640.

If, as contended by appellees, power to purchase and operate a unified system is conferred by a general statute, we could only interfere in case there appears abuse of discretionary power. The question of authority under general powers is answered by the cases cited, but decided prior to the adoption of KRS in 1942. If the statutes giving broad power are effective, those cases have application.

Section 96.350, KRS provides that a city of the third class may, under the provisions of 96.350 to 96.510, KRS, purchase and maintain water works for the purpose of supplying the city and inhabitants with water. Subsection 2 permits the acquisition of a sewage system jointly for original financing. Subsection 3 provides that sections 96.350 to 96.510 shall constitute a method for the acquisition of water works of any city (including 3d class) in addition to or as an alternate method. If that section is taken literally the method laid down is not exclusive. KRS 96.360 provides that if there be filed a petition calling for an election, signed by 25 per cent of the qualified voters of the city, the purchase is not to be consummated unless a majority voting on the proposal vote favorably.

Section 96.640, KRS provides for election to be held on a regular election day, when the contract for purchase of electric plant must be approved by a majority of qualified voters voting on the question. It is agreed that the provision, if applicable here, is mandatory, while on the water works question election is brought about on petition, a plan which appellant did not choose to put in motion.

As we read this act, which is commonly called the "T. V. A. Act," we are impressed with the idea that it was to some extent to enable municipalities to purchase power from T. V. A., or other government agency, under the federal act, 16 U. S. C. A. sec. 831 et seq., the necessity for many of the provisions arising from terms and conditions of the federal act, 96.550(3). Likewise to prohibit competition of a municipality with rural electric cooperative corporation, and perhaps to meet the objections made in the Middlesboro case, City of Mid-

dlesboro v. Kentucky Utilities Co., 284 Ky. 833, 146 S. W. (2d) 48; KRS 96.880; to provide a uniform plan for acquisition of electric plants, and to prevent disposition without consent of the populace.

Appellant stresses the provisions of KRS 96.560(2), which provide that the sections, supra, are intended to be a complete law with respect to acquisition of electric plants acquired after June 1, 1942. Subsection (4) repeats in substance the above provision and repeals laws in conflict. KRS 96.570 in respect of powers of city councils, provides that except as otherwise specifically provided the board shall exercise all powers delegated by the Act of 1942, and shall have power to perform any act not repugnant to law, and to do any act necessary or convenient for carrying out the purposes of the act, including, but not by way of limitation; (2) power to construct, acquire, own, lease, operate, maintain, and improve electric light plants, ''as defined in KRS 96.550, and may provide electric service to any user or consumer.''

Appellees rely upon the broad statutes which were passed contemporaneously with the specific statutes. KRS 96.170, provides that the ''legislative body of any city of the third class may, by ordinance, provide the city and its inhabitants with water, light, * * * by contract or by works of its own * * *; make regulations for the management thereof, and fix and regulate the prices to private consumers and customers,'' a reenactment of 3290, 3290-5 KS. They also refer to KRS 85.120, which extends to the city extensive powers in the acquisition of properties necessary for public purposes. Its general power to issue bonds is conferred by KRS 66.060. All these statutes were enacted and became laws, as did the water works and electric plant laws, upon the adoption of KRS.

Counsel for appellant contends that notwithstanding the reenactment of the statutes, it was the intent of the General Assembly to set up a single uniform method for the acquisition of electric plants, that embraced in the so-called T. V. A. Act. They emphasize KRS 446.130, which in substance provides that KRS of 1942, are intended to speak for themselves, and as of the same date, ''except that in case of conflict or ambiguity between two or more sections, resort may be had to the Acts of the General Assembly from which the sections are taken

"for the purpose of applying rules of construction applicable in resolving ambiguities." We do not find it necessary to take advantage of this provision for the reason that we are not called upon to resort to any laws other than as embraced in KRS which speak "as of the same date."

Appellees relying upon the broad powers granted by contemporaneous acts, take the position as a matter of reasonable construction, (not finding grounds for quarrel with the water works and T. V. A. laws) that these acts have no application under the admitted facts in this case, since they relate to the acquisition of separate plants, by separate methods and manner, impractical of performance and nonapplicable in the purchase of a combined system, a situation which the General Assembly either overlooked or as contended reenacted the statutes extending general powers, so that such a situation arising in good faith, without purpose of evasion might be met.

In thus contending they rely upon the rule of construction to the effect that where there be broad or general powers conferred, and in the same or another statute there is effort to deal with a portion of the general subject, the limitation is to be treated and applied as a limitation upon general powers only in such matters as arise within the limited or special provision. In other words, the special provision will be deemed an exception and the general provision construed to operate on all subjects contained therein, save the one which is subject to the special provision. United States v. Lapp, 6 Cir., 244 F. 377, 25 R. C. L. sec. 230, p. 983, 178 p. 929; 59 C. J. 643, p. 1092.

Applicable general rules as to construction of statutes as established by text writers and our opinions, are to the effect that it is the duty of the court to harmonize conflicting statutes and give effect to each if it be possible. City of Vanceburg v. Plummer, 275 Ky. 713, 122 S. W. (2d) 772; Earhart v. Middendorf, 234 Ky. 78, 79, 27 S. W. (2d) 657. On reenactment of a statute which had previously been interpreted by the courts, it is presumed that the reenactment was made with the intention of the legislature to incorporate such interpretation into the reenacted statute. Ray v. Spiers, 281 Ky. 549, 136 S. W. (2d) 750. In interpreting statutes the courts should adopt a practical construction. Board of Trus-

tees v. Kercheval, 242 Ky. 1, 45 S. W. (2d) 846. Statutes passed at the same session of the legislature should, if possible, be so construed as to give both effect. City of Pineville v. Meeks, 254 Ky. 167, 71 S. W. (2d) 33; Oldham County v. Arvin, 251 Ky. 317, 64 S. W. (2d) 907.

With these rules in mind and observed, it may be conceived that the legislature did not have in mind that a situation might arise where a city was undertaking to purchase the capital stock of a combination of plants, neither of which the owner would sell in separate units, hence made no specific provision to meet such a situation. On the other hand it may have been conceived by that body that there might arise such a situation as here exists, and for that reason reenacted statutes giving broad powers in the acquisition, management and control, where the purchase and control was of the stock of systems unified. Speculation on the intent manifested by the contemporaneous acts would create a diversity of opinion. However, there appears to have been valid reasons for the seller's insistence on its plan, and valid grounds for the city to purchase under the adamant plan.

It seems sufficient for us to say, as we read the statutes, there is to be gathered the intent of the legislature, that the T. V. A. Act is to be applied to a proposed purchase of an electric plant, likewise the water works statute when purchase and operation of such plant is contemplated. We conclude that under the admitted facts and circumstances here shown to exist, the chancellor correctly adjudged that appellees have the power to complete the contract and carry into effect the plans and purposes of the ordinances in question, thus giving effect to the broad power statute, without in the least minimizing or detracting from the purposes of the restrictive laws noted with relation to the power, authority and manner of acquiring either an electric or water system.

Judgment affirmed. Whole court sitting.

Judges Tilford and Sims dissenting.