**Rev. G. R. ABERNATHY et al., Appellants,**

**v.**

**CITY OF IRVINE et al., Appellees.**

Court of Appeals of Kentucky.

May 5, 1961.

As Modified on Denial of Rehearing March 16, 1962.

Jesse K. Lewis, Lexington, for appellants.

Ben Scott, Mart Mainous, Hunter Shumate, Irvine, for appellees.

CULLEN, Commissioner.

After completion by the City of Irvine and the County of Estill of the construction

of a joint city-county hospital building, financed by voted bond issues of the city and county and by a grant of federal funds under the Hill-Burton Act, 42 U.S.C.A. § 291 et seq., the governing authorities of the city and county found that they did not have adequate financial resources to operate the hospital. They sought in vain for some time to find a private organization willing to undertake the operation and finally obtained an agreement to do so from the St. Walburg Monastery of Benedictine Sisters of Covington, Kentucky. The legislative bodies of the city and county authorized the execution of a long-term lease of the building to the Sisters, at a rental of one dollar per year, and such a lease was executed. The lease requires that the Sisters use the property for "charitable hospital and/or charitable nursing home purposes;" that they not commence operation of the hospital until receiving approval and acceptance by the Division of Hospital Facilities of the State of Kentucky and the Health Facilities Section of the United States Government; that they maintain the property in reasonably good condition at their expense, and keep the property insured against loss by fire or storm. In order to comply with regulations under the Hill-Burton Act the Sisters further were required to agree that they would operate the facility as a public nonprofit hospital for a period of 20 years, they would accept a reasonable number of indigent or charity cases, and would not deny admission to any patient solely because of race, creed or color.

A group of citizens and taxpayers of the city and county brought this action asking that the lease be declared invalid and that the city and county officials be ordered to take over the control, management and operation of the hospital. The judgment of the circuit court declared that so much of the lease agreement as divested the public officials of the city and county of control of the management of the property and of the hospital operation was void, but the judgment dismissed that part of the complaint asking that the city and county officials be ordered to take over the operation of the hospital. The plaintiffs have appealed and the defendants have cross-appealed.

■ The first contention of the appellants is that the city and county had no power or authority to enter into any lease of the hospital property. We find no merit in this contention. In Perkins v. City of Frankfort, Ky., 276 S.W.2d 449, a similar lease of the city hospital of Frankfort, to the King's Daughters, was upheld. A lease of a county hospital to a private organization was upheld in State Bank & Trust Company of Richmond v. Madison County, 275 Ky. 501, 122 S.W.2d 99. A lease of part of the courthouse yard by a county to a blind person, for operation of a refreshment stand, was held valid in Burns v. Moore, 307 Ky. 167, 209 S.W.2d 735. A lease of part of the State Fairgrounds to a private organization was held valid in Lehman v. Matthews, Ky., 343 S.W.2d 133. In Southeastern Greyhound Lines v. City of Lexington, 299 Ky. 510, 186 S.W.2d 201, 202, it was held that the city could sell land acquired for a municipal auditorium where the city "had been required to abandon its original purpose because of a lack of funds to carry out the purpose." Broad powers to sell real estate are granted to counties and cities under KRS 65.010, 67.080, and 82.060, and it is an established principle that the power to sell includes the power to lease. Burns v. Moore, 307 Ky. 167, 209 S.W.2d 735. The city and county being financially unable to carry out their original purpose of operating the hospital as a governmental institution, we think they had the power to lease the hospital property.

■■ The second contention of the appellants is that under KRS 216.040, relating to county hospitals, and KRS 216.240, relating to city hospitals, the city and county were required to control and operate the hospital and could not surrender this duty to others. In substance, the argument

is that if a city or county, or both jointly, once undertake a hospital project they must continue to maintain it as a governmental institution. We think, however, that the statutes relied upon mean only that so long as a hospital is operated as a governmental institution the appropriate public officials must manage and control it. Here the county and city found themselves unable to operate the hospital as a governmental institution, and they chose to accomplish the purpose of making hospital facilities available for the community by leasing the hospital *building* to the Sisters, for operation by them of a private hospital serving the public. The statutes do not demand that a county or city maintain a hospital as a function of government; they merely require that if a hospital is maintained as a governmental institution it be controlled and managed by public officials. Under the lease here involved the city and county have no financial obligation in the hospital operation, so there is no need for operational control by them.

■ A related contention of appellants is that the city and county could not delegate part of their functions and responsibilities to a private organization. The circuit court, in upholding this contention, relied on Booth v. City of Owensboro, 274 Ky. 325, 118 S.W.2d 684, 686. The appellees, on their cross-appeal, maintain that the Booth case is not applicable and that the lease here in question does not make an invalid delegation. In the Booth case the governing board set up to operate a city-county hospital included representatives of a private organization, with the result that private persons shared in management decisions. The court held that the city and county had no authority to "take

a private corporation. or individuals into partnership in conducting such public enterprise." In the instant case the hospital is not being operated as a governmental institution—the city and county simply have placed the building in the hands of a private organization for the purpose of the operation of a hospital by that organization. There is no delegation of responsibility for the operation of a governmental institution because no governmental institution has been established. A similar lease of hospital property by the City of Frankfort was held valid in Perkins v. City of Frankfort, Ky., 276 S.W.2d 449, as against the contention that the lease constituted an unlawful delegation of power. It is our opinion that the lease here in question is not invalid as unlawfully divesting the public officials of control and management of the hospital operation and that the circuit court erred in holding it invalid.

■ The final contention of the appellants is that the lease gives public property to a religious organization in violation of Sections 1, 3 and 5 of the Kentucky Constitution and the First and Fourteenth Amendments to the Constitution of the United States. This contention is fully answered and refuted by the opinion in Kentucky Building Commission v. Effron, 310 Ky. 355, 220 S.W.2d 836.

On the direct appeal the judgment is affirmed; on the cross-appeal the judgment is reversed to the extent that it declares the lease invalid on the ground of divestiture of public control, with directions to enter judgment declaring the lease to be valid.