Dear Senator Doctorian:
This letter is in response to your question asking:
 How far, if at all, may the Board of Trustees of the Putnam County Memorial Hospital and the Putnam County Nursing Home go in leasing their facilities or employing management assistance in the operation of the hospital.
 Section 70.220, RSMo, provides that any municipality or political subdivision of this state may contract and cooperate with any private person, firm, association or corporation for operation of any facility. This contract must be within the scope of powers of the political subdivision and must be approved by the governing body of the county.
Enclosed and marked "Appendix A" you will find a copy of a document labeled PROPOSAL TO PUTNAM COUNTY MEMORIAL HOSPITAL AND PUTNAM COUNTY NURSING HOME (hereafter sometimes referred to as "Proposal"). Because the Proposal names the Putnam County Memorial Hospital Board of Trustees, we assume for purposes of this opinion that the Putnam County Memorial Hospital is organized and operating pursuant to Sections 205.160 to 205.340 and 205.374, RSMo 1978 and Supp. 1983, and is not a county hospital organized and operating pursuant to Sections 205.350 to 205.373, RSMo 1978. The Proposal also mentions the Putnam County Nursing Home Board. Generally, county nursing homes are organized pursuant to Section205.375, RSMo 1978. County nursing homes are under the direct control of the county courts. See, e.g., Opinion No. 414, Millan, 1967. Sections 198.200 to 198.360, RSMo 1978 and Supp. 1983, provide for the establishment of nursing home districts. Nursing home districts are governed by a board of directors. See Section198.290, RSMo 1978. Notwithstanding the unusual organizational structure of the Putnam County Nursing Home, we assume for purposes of this opinion that it is governed by Section 205.375, RSMo 1978.
1.
Leases of County Hospital Property
In Opinion Letter No. 108, Jackson, 1980, copy enclosed, this office concluded that the county court of a third class county could lease county hospital grounds pursuant to Section 49.270, RSMo 1978; provided, that the lease is for a short term and the property leased is surplus, i.e., the property is not needed by the county or county hospital. Under Section 205.190.3, RSMo Supp. 1982, the hospital board of trustees has the exclusive control of the supervision, care, and custody of the grounds, rooms, or buildings purchased, constructed, leased or set apart for hospital purposes. Therefore, the relevant hospital board of trustees must approve any such lease of such property. Paragraph A of the Proposal goes beyond the authority of the Putnam County Court and the Putnam County Memorial Hospital Board of Trustees recognized in the above-referenced opinion letter.
2.
Leases of County Nursing Home Property
Section 205.375.4, RSMo 1978, states:
 The county courts or township boards may provide for the leasing and renting of the nursing homes and equipment on the terms and conditions that are necessary and proper to any person, firm, corporation or to any nonprofit organizations for the purpose of operation in the manner provided in subsection 1.
Subsection 1 of Section 205.375, RSMo 1978, defines the words "nursing home". This statute grants the county courts the authority to lease county nursing homes.
Article VI, Sections 23 and 25, Missouri Constitution, prohibit any county from granting any public money or property to private individuals, associations, or corporations. Thus, the consideration for the lease would have to equal or be greater than the fair market value of the leasehold. The Proposal does not explicitly mention any consideration for the lease of the county nursing home property. Paragraph F of the Proposal mentions the "provision of care to all patients in Putnam County." If this provision is interpreted as requiring the private contractor to provide nursing home care to indigents, the private contractor would be providing some consideration for the lease by discharging the county's obligation to support the poor pursuant to Sections205.580 to 205.760, RSMo 1978. Whether or not this consideration is adequate is a factual matter.
3.
Operation Agreements for County Hospitals
Section 70.220, RSMo 1978, inter alia, authorizes any municipality or political subdivision of this state to contract and cooperate with any private person, firm, association, or corporation for the operation of any public improvement or facility; provided, that the subject and purposes of any such contract or cooperative action is within the scope of the powers of such municipality or political subdivision. Obviously, the operation of a county hospital is within the scope of the powers of a county. See Sections 205.160 to 205.340 and 205.374, RSMo 1978 and Supp. 1982. A county hospital is a public facility. Therefore, this statute grants the authority for county hospital operation agreements.[1]
Missouri recognizes the common law rule that political subdivisions may not delegate or contract away their governmental functions. See, e.g., Arkansas-Missouri Power Co. v. City ofKennett, 78 F.2d 911, 918-923 (8th Circ. 1935), appeal dismissedin part, Missouri Public Service Co. v. City of Trenton, 80 F.2d 520
(8th Cir. 1935); Stewart v. City of Springfield, 350 Mo. 234,246, 165 S.W.2d 626, 629 (banc 1942); State ex rel. Kansas CityIns. Agents' Ass'n v. Kansas City, 319 Mo. 386, 398-399, 4 S.W.2d 427,432 (banc 1928); Farm Home Investment Company v. Gannon,622 S.W.2d 305, 307 (Mo.App. 1981).
We are aware of no Missouri appellate decisions dealing with hospital operation agreements and the delegation doctrine.[2]
However, we are confident that the Proposal would strip the Putnam County Memorial Hospital Board of Trustees of many of the powers conferred upon that body by statute. For example, Section205.190.4, RSMo Supp. 1983, provides that the board of hospital trustees shall have the power to appoint and remove a suitable chief executive officer and necessary assistants, while Paragraph J of the Proposal makes it appear that the private contractor has the authority to evaluate employee performance and fire hospital personnel. Accordingly, the Proposal would unlawfully delegate or contract away the powers of the Putnam County Memorial Hospital Board of Trustees. See also Opinion No. 21-84, copy enclosed. If the board of hospital trustees wishes to dispose of the county hospital, it may do so pursuant to the procedures codified at Section 205.374, RSMo 1978. As we read the Proposal, it proposes an unauthorized disposition of the county hospital.
4.
Operation Agreements for County Nursing Homes
We believe that a county nursing home is a public facility and that the operation of a county nursing home is within the scope of the powers of a county under Section 205.375, RSMo 1978.See Opinion No. 18, Colley, 1959. Therefore, a county court may enter into a county nursing home operation agreement pursuant to Section 70.220, RSMo 1978. However, a county court may not delegate or contract away its governmental functions. We believe the Proposal would constitute such an unlawful delegation or contracting away of functions properly vested in the county court.
Very truly yours,
 JOHN ASHCROFT Attorney General
Enclosures: Opinion Letter No. 108, Jackson, 1980 Opinion 21-84
[1] Section 70.210(2), RSMo 1978, defines the words "political subdivision" to include counties. County hospitals are instrumentalities of counties and are not separate political subdivisions.See, e.g., Opinion No. 113-83. Section 70.230, RSMo 1978, provides that counties may execute cooperative agreements by an order duly made and entered by the county court. Under Section205.190.3, RSMo Supp. 1982, the hospital board of trustees has the authority to adopt such bylaws, rules, and regulations for the government of the hospital as may be deemed expedient for the economic and equitable conduct thereof, not inconsistent with Sections 205.160 to 205.340 and the ordinances of the city or town wherein such public hospital is located. Thus, the county court enters a county hospital operation contract pursuant to Section70.220, RSMo 1978, with the condition that the hospital board of trustees may at any time terminate the contract by promulgating a bylaw, rule, or regulation prohibiting the particular type of operation agreement entered into. For this reason, it may be advantageous for the hospital board of trustees to promulgate a bylaw, rule, or regulation authorizing the particular type of operation agreement contemplated.
[2] Related decisions of other states are difficult to reconcile.See, e.g., Lien v. City of Ketchikan, 383 P.2d 721 (Alaska 1963);State Bank Trust Co. of Richmond v. Madison County, 275 Ky. 501,122 S.W.2d 99 (1938); Booth v. City of Owensboro, 274 Ky. 325,118 S.W.2d 684 (1938).
 PROPOSAL TO PUTNAM COUNTY MEMORIAL HOSPITAL AND PUTNAM COUNTY NURSING HOME UNIONVILLE, MISSOURI
A. Research Management Group will lease and operate Putnam County Memorial Hospital and Putnam County Nursing Home for a period of five years.
B. Research Management Group agrees to continue the operation of Putnam County Memorial Hospital as a general acute care facility and the operation of Putnam County Nursing Home as a nursing facility during the terms of the lease.
C. Putnam County agrees not to build or own a general acute care hospital or nursing home within the County.
D. Research Management Group agrees to form a self-perpetuating Community Board in order to involve the local community in the policy and future direction of the Hospital and Nursing Home. The Board is to be selected as follows:
 1. The present Putnam County Memorial Hospital Board nominates five people to staggered three year terms.
 2. The present Putnam County Nursing Home Board nominates five people to staggered three year terms.
 3. The Medical Staff nominates one member from the medical staff to a three year term.
 4. Research Management Group nominates two people to staggered three year terms.
 The appointment of the Community Board will be subject to the approval of the Research Health Services System. Responsibilities of the Community Board shall be pursuant to the policies established by the Research Health Services System.
E. The Research Health Services System proposes to operate Putnam County Memorial Hospital and Putnam County Nursing Home with levels of human resources and capital which assure high quality of care.
F. Research Management Group will continue to operate Putnam County Memorial Hospital and Putnam County Nursing Home in a manner responsive to the health care needs of the citizens of Putnam County. This would include retention of community service programs and provision of care to all patients in Putnam County.
G. The present tax levy from the County shall be retained, but its use shall be limited to payment of bad debts incurred by Research Management Group in operating the Putnam County Memorial Hospital and for capital improvements for the Putnam County Memorial Hospital that shall remain the property of Putnam County Memorial Hospital.
H. Research Management Group agrees to remove the County from any financial operating and capital improvement responsibility associated with the operation of the Hospital and Nursing Home.
I. Research Management Group will maintain the physical plant and equipment in proper working condition in conformance with building code, fire marshal and licensure requirements; and will provide maintenance, repairs and replacement as needed.
J. Research Management Group agrees to retain the existing employees of Putnam County Memorial Hospital and Putnam County Nursing Home subject to periodic evaluation of ability and the personnel requirements for the services to be rendered.
K. Research Management Group agrees to maintain adequate fire and extended insurance coverage on the buildings, improvements and equipment.
L. Research Management Group agrees to maintain adequate workmen's compensation insurance, general comprehensive public liability coverage and other appropriate insurance coverage; and Research Management Group agrees to indemnify and hold Putnam County Memorial Hospital and Putnam County Nursing Home harmless from any claims, demands, losses or damages arising from its use, occupancy or operation of the facilities.
M. The final agreement will provide both parties the right to terminate the lease agreement. Putnam County Memorial Hospital and Putnam County Nursing Home would have the right to terminate the lease if Research Management Group does not continue to provide general acute care and long term care services to the Putnam County community. If the Putnam County Memorial Hospital and the Putnam County Nursing Home terminate the agreement, they will agree to provide six months written notice and reimburse Research Management Group all accrued operating losses and capital improvements.
 Research Management Group would have the right to terminate the agreement if it determines that continued operation of an acute care facility is not financially feasible. If Research Management Group terminates the agreement, it will provide six months written notice and there will be no reimbursement for operating losses or capital improvement.
N. Subject to continuation of its obligations under the proposal, Research Management Group may assign the lease operating agreement or delegate the performance of its management or service functions thereunder to any affiliate owned or controlled by Research Health Services.
O. This lease proposal is conditioned upon approval of the Research Health Services Board of Directors and any necessary Certificate of Need.